William Fried
HERRICK, FEINSTEIN LLP
Attorneys For Plaintiffs
2 Park Avenue
New York, NY 10016-9301
(212) 592-1400
wfried@herrick.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Electronically Filed Document

– – – – – – – – – – – – – – – – – – – – – – – – – x

EVGENY A. FREIDMAN, VLADIMIR BASIN, :
MAMED DZHANIYEV, Victory Taxi Garage Inc.,:
Tunnel Taxi Management, LLC, Downtown Taxi :
Management, LLC, Bazar Taxi Inc., Patron Taxi :
LLC, Grappa Taxi LLC, Cognac Taxi LLC, :
Calvados Taxi LLC, Tequila Taxi LLC, Jack :
Daniels Taxi LLC, Murzik Taxi Inc., Malinka Taxi :
Inc., Yagodka Taxi Inc., Persik Taxi Inc., Bratishka :
Taxi Inc., Pumo Taxi Inc., Piguet Taxi Inc., :
Kormilitsa Taxi Inc., Prada Taxi, Inc., Student Taxi :
Inc., Hublot Taxi Inc., Torpedo Taxi Inc., Black :
Label Taxi LLC, Praga Taxi Inc., Two Hump Taxi :
LLC, Kroshka Taxi Inc., Lacoste Taxi Inc., Sangria :
Taxi LLC, Volba Taxi Inc., :
                          :

                    Plaintiffs,:


        -against-                  :
                          :

GENERAL MOTORS CORP., ELDORADO :
NATIONAL, INC., and ARCOLA SALES & :
SERVICE CORP., :
                          :

                  Defendants.:

Civ. Action No. 1:08-CV-02458-SAS

DECLARATION IN OPPOSITION TO
DEFENDANTS' MOTIONS TO
DISMISS THE VERIFIED
COMPLAINT

JURY TRIAL DEMANDED

– – – – – – – – – – – – – – – – – – – – – – – – – X

        William Fried, an attorney duly admitted to practice in this Court declares under

penalty of perjury as follows:

            1.      I am associated with Herrick, Feinstein LLP, attorneys for Plaintiffs in this

matter. I am fully familiar with the facts set forth herein.

2.    I submit this declaration in opposition to the motions to dismiss of Defendant General Motors Corp. and Defendant ElDorado National, Inc..

3.    The original Verified Complaint in this matter was served on or about March 11, 2008.

4.    Annexed hereto as Exhibit "A" is a copy of the Verified Complaint.

5.    Plaintiffs amended their complaint on June 9, 2008.

6.    Annexed hereto as Exhibit "B" is a copy of the First Amended Complaint.

Dated: New York, New York
     June 9, 2008

                                   _____/s/ William Fried_____
                                   William Fried
                                   HERRICK, FEINSTEIN LLP
                                   Attorneys For Plaintiffs
                                   2 Park Avenue
                                   New York, NY 10016-9301
                                   (212) 592-1400
                                   wfried@herrick.com

# EXHIBIT A

11894-2
3110108
XC

# JUDGE SCHEINDLIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - x

EVGENY A. FREIDMAN, VLADIMIR BASIN,
MAMED DZHANIYEV, Victory Taxi Garage Inc., :
Tunnel Taxi Management, LLC, Downtown Taxi
Management, LLC, Bazar Taxi Inc., Patron Taxi :
LLC, Grappa Taxi LLC, Cognac Taxi LLC,
Calvados Taxi LLC, Tequila Taxi LLC, Jack :
Daniels Taxi LLC, Murzik Taxi Inc., Malinka Taxi :
Inc., Yagodka Taxi Inc., Persik Taxi Inc., Bratishka :
Taxi Inc., Pumo Taxi Inc., Piguet Taxi Inc.,
Kormilitsa Taxi Inc., Prada Taxi, Inc., Student Taxi :
Inc., Hublot Taxi Inc., Torpedo Taxi Inc., Black
Label Taxi LLC, Praga Taxi Inc., Two Hump Taxi :
LLC, Kroshka Taxi Inc., Lacoste Taxi Inc., Sangria :
Taxi LLC, Volba Taxi Inc.,

                        Plaintiffs,          :

        -against-                            :

GENERAL MOTORS CORP., ELDORADO
NATIONAL, INC., and ARCOLA SALES &
SERVICE CORP.,

                        Defendants.          :

- - - - - - - - - - - - - - - - - - - - - - - - - X

Civ. No. _____

08 CV 02458

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**



RECEIVED
MAR 11 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs Evgeny A. Freidman, Vladimir Basin, Mamed Dzhaniyev, Victory Taxi

Garage, Inc., Tunnel Taxi Management, LLC, Downtown Taxi Management, LLC, Bazar Taxi

Inc., Patron Taxi LLC, Grappa Taxi LLC, Cognac Taxi LLC, Calvados Taxi LLC, Tequila Taxi

LLC, Jack Daniels Taxi LLC, Murzik Taxi Inc., Malinka Taxi Inc., Yagodka Taxi Inc., Persik

Taxi Inc., Bratishka Taxi Inc., Pumo Taxi Inc., Piguet Taxi Inc., Kormilitsa Taxi Inc., Prada

Taxi, Inc., Student Taxi Inc., Hublot Taxi Inc., Torpedo Taxi Inc., Black Label Taxi LLC, Praga

Taxi Inc., Two Hump Taxi LLC, Kroshka Taxi Inc., Lacoste Taxi Inc., Sangria Taxi LLC, Volba

Taxi Inc. (collectively, "Plaintiffs") by their attorneys, Herrick, Feinstein LLP, as and for their

complaint against Defendants General Motors Corp., ElDorado National, Inc., and Arcola Sales & Service Corp. (collectively, "Defendants") hereby allege as follows:

## Nature of the Action

1.    Plaintiffs seek to recover the damages they have suffered as a result of Defendants', General Motors Corp. ("GM"), ElDorado National Inc. ("ElDorado"), and Arcola Sales & Service Corp. ("Arcola"), wanton and gross disregard for customer safety. Plaintiffs have suffered extensive losses because of Defendants' negligence in improperly manufacturing, retrofitting, and selling defective Chevrolet Uplanders (the "Vehicles" or the "Taxis"), which, as Defendants knew, were specifically purchased for use as wheelchair-accessible taxicabs in New York City.

2.    Plaintiffs have also been significantly damaged by Defendants' warranty breaches. Defendants have breached the vehicles' sales contracts with Plaintiffs and have violated Article 2 of the Uniform Commercial Code ("UCC"). Defendants' breaches have gravely damaged Plaintiffs' business. Plaintiffs are bogged down with the frustrating task of managing a fleet of dysfunctional taxicabs, relentlessly repairing the failing vehicles, finding new taxicab drivers to replace drivers who find it too risky to drive the vehicles, pacifying taxicab drivers who are losing money because the taxis are constantly off the road being repaired, addressing the citizens of New York who expected safe and functioning wheelchair-accessible taxicabs, loss of driver shifts, loss of reputation in the community, towing costs, the cost of alternate travel for stranded passengers, damages for lost opportunity of advertising on the tops of the vehicles, and the list of harms goes on and on.

3.    Plaintiffs seek this court's protection from any further wrongdoing by Defendants, and for money damages to compensate for Defendants' blatant contract and warranty breaches.

## Jurisdiction and Venue

4.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332, because there is complete diversity between the parties, and the amount in controversy exceeds $75,000.00.

5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391, because Plaintiffs' principal place of business is located in this district.

## Parties

6.    Evgeny Freidman is an individual residing in the State of New York.

7.    Vladimir Basin is an individual residing in the State of New York.

8.    Mamed Dzhaniyev is an individual residing in the State of New York.

9.    Victory Taxi Garage, Inc., is a New York corporation with offices at 102 Foster Avenue, Brooklyn, NY 11230.

10.    Tunnel Taxi Management, LLC, is a New York corporation with offices at 44-07 Vernon Blvd., Long Island City, NY 11101.

11.    Downtown Taxi Management, LLC, is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

12.    Bazar Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

13.    Patron Taxi LLC, is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

14.    Grappa Taxi LLC, is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

15.    Cognac Taxi LLC, is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

16.    Calvados Taxi LLC, is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

17.    Tequila Taxi LLC, is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

18.    Jack Daniels Taxi LLC, is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

19.    Murzik Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

20.    Malinka Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

21.    Yagodka Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

22.    Persik Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

23.    Bratishka Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

24.    Pumo Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

25.    Piguet Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

26.    Kormilitsa Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

27.    Prada Taxi, Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

28.    Student Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

29.    Hublot Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

30.    Torpedo Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

31.    Black Label Taxi LLC, is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

32.    Praga Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

33.    Two Hump Taxi LLC, is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

34.    Kroshka Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

35.    Lacoste Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

36.    Sangria Taxi LLC, is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

37.    Volba Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231.

38.    Upon information and belief, General Motors is a Michigan corporation whose headquarters are located at 300 Renaissance Center, Detroit, Michigan 48265. General Motors is in the business of manufacturing and selling automotive vehicles.

39.    Upon information and belief, ElDorado National, Inc., a subsidiary of Thor Industries, is a Kansas corporation, whose principal place of business is located at 1655 Wall St., Salina, Kansas 67401. Upon information and belief, Defendant ElDorado is in the business of retrofitting automotive vehicles.

40.    Arcola Sales & Service Corp. is a corporation whose principal place of business is located at 51 Kero Road, Carlstadt, New Jersey 07072. Upon information and belief, Defendant Arcola is in the business of selling automotive vehicles.

## Background

41.    Plaintiffs aver that as a result of the faulty design of the vehicles and Defendants' failed repair attempts, the vehicles Plaintiffs have purchased from Defendants cannot be utilized for reliable, safe, and functioning taxicabs as intended by Plaintiffs at the time of acquisition, and further, that Defendants' warranties have failed their essential purpose.

## Wheelchair-Accessible Taxicabs and Medallions

42.    The New York City taxicab industry is a private industry closely regulated by the New York City Taxi & Limousine Commission (the "TLC"). The TLC was created in 1971 by New York City Council legislation (Local Law 12) to regulate and improve taxi and livery service in New York City and to establish overall transportation policy governing these services. Upon information and belief, there are only 13,148 medallion taxicabs currently authorized to accept hails from passengers within the five boroughs of the New York City.

43.    The TLC is responsible for, *inter alia*, licensing and regulating New York City's medallion (yellow) taxicabs, for-hire vehicles (community-based liveries and black cars), commuter vans, paratransit vehicles (ambulettes), and certain luxury limousines.

44.    A "taxicab medallion" is a metallic symbol affixed to the hood of a New York City taxicab that represents a license from the City, authorizing the operation of a taxicab within the City of New York.  The number of taxicab medallions in New York City is limited by law.  Licensed taxicabs are the only motor vehicles permitted to accept passengers by street hail on the streets of New York City.

45.    Not only is a medallion a license to operate a taxicab and generate income from such operations, but it is also a license to own and operate a small business, to use as security for loans, and to lease the license to other operators for a fee limited by law.  Taxicab licenses may also be transferred to another qualified buyer subject to certain restrictions.

46.    An "Accessible Medallion" is a restricted medallion and is defined as a "a taxicab license valid for use only with a vehicle accessible to a passenger using a wheelchair." R.C.N.Y. § 13-01(a).  Presently, only 144 out of the 13,148 taxicab medallions in New York City are Accessible Medallions.

47.    On or about October 15, 2004, the TLC, auctioned off Accessible Medallions. Plaintiffs bid on and won eleven (11) of these medallions.

48.    On or about June 16, 2006, the TLC auctioned off more Accessible Medallions.  Plaintiffs bid on and won fifty four (54) of these medallions.

49.    The Accessible Medallions purchased by Plaintiffs gave Plaintiffs the right to operate wheelchair-accessible taxicabs in New York City that are licensed to pick up passengers from the street.

50.    Upon information and belief, until in or around late 2007 the TLC had approved only one brand of vehicle for wheelchair-accessible purposes -- the Chevrolet Uplander. Arcola advertised and sold Uplanders that GM had given ElDorado authorization to retrofit as accessible to wheelchairs.

51.    Upon information and belief, Defendants had presented this vehicle to the TLC for the TLC's approval for use of the retrofitted Uplander as a wheelchair-accessible taxi. The TLC then listed Defendant Arcola as an authorized dealer of these approved vehicles since the vehicle's specifications met the appropriate TLC requirements and ADA standards. Arcola advertised to the public that ElDorado's retrofitted vehicles were suitable for use as New York City taxicabs.

**The Retrofitting**

52.    Upon information and belief, GM provided ElDorado with the Chevrolet Uplander frame. Based on GM's design, ElDorado then retrofitted the vehicles for wheelchair-accessibility at its factory in Kansas. Once the vehicles were retrofitted, the vehicles were delivered to Arcola for final delivery to the customers.

53.    Upon information and belief, based on GM's design, ElDorado made substantial changes to the vehicle which involved extensive cutting to the body structure, including lengthening and lowering of vehicle components to accommodate wheelchair riding occupants entry into the vehicle.

54.    Upon information and belief, General Motors also provided "original equipment manufacturer" (OEM) support as well as assistance to ElDorado both in producing and repairing ElDorado's failed retrofitting.

55.    Defendants advertised and warranted that the Uplanders complied with the American Disabilities Act (ADA), the Administrative Code of the City of New York, and the TLC wheelchair-accessibility requirements.

56.    In or around late 2006, Plaintiffs ordered fifty two (52) retrofitted Chevrolet Uplanders from Arcola (the "Orders"). Upon information and belief, Arcola informed Plaintiffs that the vehicles were to be retrofitted by ElDorado pursuant to the TLC specifications for wheelchair-accessible taxicabs.

57.    Plaintiffs' Orders for the vehicles included modifications and additions so the vehicles could function as taxis. For example, the Orders included payment for taxicab walls and taxicab swing-in ramps.

58.    Throughout the period that the vehicles were experiencing complications, Defendants knew about the vehicles' failures and were involved in the failed repair and re-engineering process. Upon information and belief, General Motors assisted ElDorado in designing a solution to implement to fix the doors of the retrofitted vehicles. In or around the end of 2007, Defendants allegedly designed a global repair to fix some the Uplanders' many problems, however, Defendants' design would not have helped the extensive damage that had already occurred because of Defendants' negligent manufacture and design.

59.    Upon information and belief, General Motors has discontinued the particular design of the Chevrolet Uplander that Plaintiffs' purchased for use as taxicabs.

**The Failed Repairs**

60.    Despite Defendants' advertisements and warranties, Plaintiffs received defective vehicles that were constantly failing.

61.    Upon information and belief, ElDorado's retrofitting design for the purpose of wheelchair accessibility severely compromised critical components of the Uplander, such as the rear suspension, the transmission and the sliding door system. The harm to each of these further negatively impacted other of the vehicles' parts.

62.    Upon information and belief, Defendants did not sufficiently test and/or properly engineer the vehicles or Defendants would have detected these substantial flaws.

63.    As a result of Defendants' negligent engineering, the following common problems occurred: (a) the axles separated from the chassis, (b) doors fell from the hinges, at times while the vehicle was in motion, (c) faulty engine mounts came loose, (d) problems with defective trailing arm bushings occurred, (e) transmission failures occurred, and (f) problems occurred with the vehicles' on-board diagnostic technology ("OBD").

64.    Each of the vehicles has required several repairs, and since early 2007, Plaintiffs have had to employ a tow truck more than 300 times to transport broken-down wheelchair-accessible taxis to repair shops.

65.    Because each of the vehicles required extensive repairs, each of the vehicles was removed more than one time from the road for vehicle repairs, as well as to avert further breakdowns.

66.    As a result of the repeated repairs and Plaintiffs' inability to use the vehicles, Plaintiffs have lost in total more than 7,820 shifts, at a loss of revenue of more than $2,000,000.

67.    As a further result of the numerous safety problems with the taxis, taxi drivers have refused to drive these vehicles and these drivers have sought to drive taxicabs belonging to other owners.

68.    Although Plaintiffs immediately notified Defendants of the vehicles' problems, Plaintiffs had to make multiple phone calls and send Defendants numerous letters and e-mails before Defendants would act toward fixing the defective retrofitting.

69.    Though Defendants eventually performed makeshift repairs on the vehicles, the vehicles were so critically defective that even Defendants could not maintain sufficient manpower to address the defects.

70.    Upon information and belief, Defendants' technicians would repair the immediate failures, but this did could not stop further damage from occurring. Further, the technicians' repairs caused further damage. Upon information and belief, the technicians did not advise Plaintiffs that the suspension, as altered by Defendants' design, was causing damage to the vehicle.

71.    Upon recognizing that Defendants had made critical errors in the manufacture, design, and sale of the retrofitted vehicle, Plaintiffs demanded return of their money and demanded that Defendants remove all of the defective vehicles from Plaintiff and that Defendants refund him for the cost of the faulty vehicles. Defendants have refused all of Plaintiffs demands.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

72.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "71" above.

73.    The bills of sales between Plaintiffs and Defendants for the sales of the Chevrolet Uplanders were valid and enforceable.

74.     The sales agreements reflected the bargain between and amongst the parties for the purchase of vehicles to serve as taxicabs with wheelchair-accessibility in New York City.

75.     At all times relevant herein, Plaintiffs have fully performed their obligations under the foregoing agreements.

76.     Pursuant to the sales agreements, Defendants agreed to provide Plaintiffs with new Chevrolet Uplanders retrofitted in a condition fit for use as wheelchair-accessible taxicabs.

77.     As received by Plaintiffs, the vehicles were defective, and were not capable of meeting the standards of quality and performance for a vehicle of its kind.

78.     Plaintiffs, on numerous occasions, gave Defendants timely notice of the vehicles' defects; nevertheless, Defendants' repairs were never able to cure the fundamental defects of the basic engineering flaws, as designed by Defendants.

79.     Plaintiffs have not been able to, and will never be able to, reap the benefit of their bargain.

80.     Defendants breached the sales agreements with Plaintiffs.

81.     By reason of the foregoing, Plaintiffs have suffered damages, including but no less than the amount paid for the vehicles, $3,000,000, and consequential and incidental damages, in an amount to be determined at trial but believed to be no less than $3,000,000.

## SECOND CAUSE OF ACTION
### (Breach of Warranty)

82.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "81" above.

83.    The vehicles constitute "goods" within the meaning of Article 2 of the Uniform Commercial Code as adopted in New York. Defendants, merchants of vehicles, sold the vehicles to Plaintiffs.

84.    Defendants affirmatively represented to Plaintiffs that the vehicles would properly operate. This representation constituted an express warranty within the meaning of the UCC.

85.    At the time that Defendants made this representation, Defendants knew or should have known that Plaintiffs would rely on their representations in deciding whether to purchase the vehicles.

86.    Plaintiffs did rely on Defendants' representation that the vehicles had been correctly retrofitted for customers in wheelchairs and would be able to function properly. If Defendants had truthfully represented the unfit nature of the vehicles, clearly, Plaintiffs would not have purchased the vehicles.

87.    Defendants' negligent design compromised critical components of the Chevrolet Uplanders, and the result was a vehicle that was not in the condition fit for use as wheelchair-accessible taxicabs.

88.    By reason of the foregoing, Defendants have breached their express warranties to Plaintiffs.

89.    As a direct and proximate cause of the breach of express warranty, Plaintiffs have been damaged in an amount to be determined at trial, but believed to be no less than $3,000,000.

### THIRD CAUSE OF ACTION
**(Breach of Implied Warranty for a Particular Purpose)**

90.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "89" above.

91.    The vehicles constitute "goods" within the meaning of Article 2 of the Uniform Commercial Code. Defendants, merchants of vehicles, sold the vehicles to Plaintiffs.

92.    At the time that Defendants sold the vehicles to Plaintiffs, Defendants knew or had reason to know that Plaintiffs intended to use the vehicles as taxicabs. Defendants committed to retrofit the vehicles, to paint the vehicles yellow and to mark the vehicles with the New York City taxi logo. Defendants retrofitted a vehicle for the TLC to inspect and the TLC to approve; these vehicles were specially retrofitted to meet the standards of the NYC taxi industry, and to comply with TLC regulations.

93.    The sales agreements reflected the bargain between and amongst the parties for vehicles to serve as taxicabs with wheelchair-accessibility in New York City. Defendants provided an implied warranty of fitness for the particular purpose as functional New York City wheelchair-accessible taxicabs.

94.    Defendants have breached the warranty of fitness for a particular purpose because the vehicles they sold to Plaintiffs were defective, were not fit for use as wheelchair-accessible taxicabs, and have caused Plaintiffs tremendous damage.

95.    As a direct and proximate result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiffs have been damaged in an amount to be determined at trial, but believed to be no less than $3,000,000.

## FOURTH CAUSE OF ACTION
### (Injunction)

96.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "95" above.

97.    The vehicles' essential problems -- the poor engineering and design -- cannot be remedied.

98.    Accordingly, Defendants must be compelled to relieve Plaintiffs of the defective, non-conforming vehicles to preclude future harm to Plaintiffs.

WHEREFORE, Plaintiffs Evgeny A. Freidman, Vladimir Basin, Mamed Dzhaniyev, Victory Taxi Garage, Inc., Tunnel Taxi Management, LLC, Downtown Taxi Management, LLC, Bazar Taxi Inc., Patron Taxi LLC, Grappa Taxi LLC, Cognac Taxi LLC, Calvados Taxi LLC, Tequila Taxi LLC, Jack Daniels Taxi LLC, Murzik Taxi Inc., Malinka Taxi Inc., Yagodka Taxi Inc., Persik Taxi Inc., Bratishka Taxi Inc., Pumo Taxi Inc., Piguet Taxi Inc., Kormilitsa Taxi Inc., Prada Taxi, Inc., Student Taxi Inc., Hublot Taxi Inc., Torpedo Taxi Inc., Black Label Taxi LLC, Praga Taxi Inc., Two Hump Taxi LLC, Kroshka Taxi Inc., Lacoste Taxi Inc., Sangria Taxi LLC, Volba Taxi Inc., demand the entry of judgment against Defendants General Motors Corp., ElDorado National Inc., and Arcola Sales & Service Corp. awarding them as follows:

A. On the first cause of action, damages, including consequential and incidental damages, as a result of Defendants' breach of contract in an amount to be determined at trial, but no less than $3,000,000, and;

B. On the second cause of action, damages, including consequential and incidental damages, as a result of breaching the express warranty in an amount to be determined at trial, but no less than $3,000,000, and;

C. On the third cause of action, damages, including consequential and incidental damages, as a result of breaching the implied warranty of fitness for a particular purpose in an amount to be determined at trial, but no less than $3,000,000, and;

D. On the fourth cause of action an injunction to compel Defendants to refund Plaintiffs and to remove the vehicles from Plaintiffs' hands;

E. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
       March 10, 2008

HERRICK, FEINSTEIN LLP

By: _____
       William Fried
       wfried@herrick.com
Attorney for Plaintiffs
2 Park Avenue
New York, New York 10016
(212) 592-1400

## VERIFICATION

STATE OF NEW YORK     )
                        )ss.:
COUNTY OF NEW YORK   )


EVGENY FREIDMAN, being duly sworn, deposes and says:


I am the Plaintiff in the above-captioned action. I have read the foregoing

Verified Complaint, know the contents thereof and the same are true to my knowledge,

except those matters therein which are stated to be alleged on information and belief, and

as to those matters, I believe them to be true.

EVGENY FREIDMAN


Sworn to before me this
6th day of March, 2008


Notary Public

Notary Public, State of New York
No. 01FR6001263
Qualified in Suffolk County
Commission Expires July 25, 2010


HF 4005183 v.1  #11894/0002 03/04/2008 01:30 PM

## VERIFICATION

STATE OF NEW YORK    )
                          )ss.:
COUNTY OF NEW YORK  )

MAMED DZHANIYEV, being duly sworn, deposes and says:

I am the Plaintiff in the above-captioned action.  I have read the foregoing

Verified Complaint, know the contents thereof and the same are true to my knowledge,

except those matters therein which are stated to be alleged on information and belief, and

as to those matters, I believe them to be true.

_____
Mamed Dzhaniyev

Sworn to before me this
_6_ day of March, 2008

_____
Notary Public

MAKSIM KATS
Notary Public, State of New York
No. 01KA6151561
Qualified in Kings County
Commission Expires Aug. 21, 2010

HF 4005183 v.1  #11894/0002 03/04/2008 01:30 PM

## VERIFICATION

STATE OF NEW YORK     )
                          )ss.:
COUNTY OF NEW YORK  )


Vladimir Basin, being duly sworn, deposes and says:


I am the Plaintiff in the above-captioned action.  I have read the foregoing

Verified Complaint, know the contents thereof and the same are true to my knowledge,

except those matters therein which are stated to be alleged on information and belief, and

as to those matters, I believe them to be true.

_UBasin_
_____
Vladimir Basin


Sworn to before me this
_6_ day of March, 2008

Notary Public
MARSHKATS
Notary Public, State of New York
No. 01KA6151561
Qualified in Kings County
Commission Expires Aug. 21, 2010


HF 4005183 v.1  #11894/0002 03/04/2008 01:30 PM

Civil Action No. 08 CV 2458 (SAS)

*United States District Court*
*Southern District of New York*

Evgeny A. Freidman, Vladimir Basin,
Mamed Dzhaniyev, et al.

Plaintiffs,

-against-

General Motors Corp., ElDorado National, Inc.,
and Arcola Sales & Service Corp.

Defendants.

*Verified Complaint*

**Herrick, Feinstein LLP**
**2 Park Avenue**
**New York, NY 10016**
**212.592.1400**

*Attorneys For:*

Evgeny A. Freidman, Vladimir Basin, Mamed Dzhaniyev, et al.,
Plaintiffs

# EXHIBIT B

William Fried
Inbal Baum
Attorneys for Plaintiffs
2 Park Avenue
New York, New York 10016
(212) 592-1400
wfried@herrick.com
ibaum@herrick.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ x

EVGENY A. FREIDMAN, VLADIMIR BASIN,  :
MAMED DZHANIYEV, Victory Taxi Garage Inc., :     Civ. No. 08-CV-02458 (SAS)
Tunnel Taxi Management, LLC, Downtown Taxi  :
Management, LLC, Bazar Taxi Inc., Patron Taxi  :     **FIRST AMENDED COMPLAINT**
LLC, Grappa Taxi LLC, Cognac Taxi LLC,     :
Calvados Taxi LLC, Tequila Taxi LLC, Jack   :
Daniels Taxi LLC, Murzik Taxi Inc., Malinka Taxi :     **JURY TRIAL DEMANDED**
Inc., Yagodka Taxi Inc., Persik Taxi Inc., Bratishka :
Taxi Inc., Pumo Taxi Inc., Piguet Taxi Inc.,   :
Kormilitsa Taxi Inc., Prada Taxi, Inc., Student Taxi :
Inc., Hublot Taxi Inc., Torpedo Taxi Inc., Black  :
Label Taxi LLC, Praga Taxi Inc., Two Hump Taxi  :
LLC, Kroshka Taxi Inc., Lacoste Taxi Inc., Sangria :
Taxi LLC, Volba Taxi Inc.,       :
                    :
                Plaintiffs,    :
                    :
    -against-           :
                    :
GENERAL MOTORS CORP., ELDORADO    :
NATIONAL, INC., and ARCOLA SALES &   :
SERVICE CORP.,          :
                    :
                Defendants.    :

‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ X

Plaintiffs Evgeny A. Freidman, Vladimir Basin, Mamed Dzhaniyev, Victory Taxi

Garage, Inc., Tunnel Taxi Management, LLC, Downtown Taxi Management, LLC, Bazar Taxi

Inc., Patron Taxi LLC, Grappa Taxi LLC, Cognac Taxi LLC, Calvados Taxi LLC, Tequila Taxi

LLC, Jack Daniels Taxi LLC, Murzik Taxi Inc., Malinka Taxi Inc., Yagodka Taxi Inc., Persik

Taxi Inc., Bratishka Taxi Inc., Pumo Taxi Inc., Piguet Taxi Inc., Kormilitsa Taxi Inc., Prada

Taxi, Inc., Student Taxi Inc., Hublot Taxi Inc., Torpedo Taxi Inc., Black Label Taxi LLC, Praga

Taxi Inc., Two Hump Taxi LLC, Kroshka Taxi Inc., Lacoste Taxi Inc., Sangria Taxi LLC, Volba

Taxi Inc. (collectively, "Plaintiffs") by their attorneys, Herrick, Feinstein LLP, as and for their

complaint against Defendants General Motors Corp., ElDorado National, Inc., and Arcola Sales

& Service Corp. (collectively, "Defendants") hereby allege as follows:

### Nature of the Action

1.     Plaintiffs seek to recover the damages they have suffered as a result of

Defendants', General Motors Corp. ("General Motors"), ElDorado National Inc. ("ElDorado"),

and Arcola Sales & Service Corp. ("Arcola"), wanton and gross disregard for customer safety.

Plaintiffs have suffered extensive losses because of Defendants' negligence in improperly

manufacturing, retrofitting, and selling defective Chevrolet Uplanders (the "Vehicles" or the

"Taxis"), which, as Defendants knew, were specifically purchased for use as wheelchair-

accessible taxicabs in New York City.

2.     Plaintiffs have also been significantly damaged by Defendants' express

and implied warranty breaches. Defendant Arcola has breached the vehicles' sales contracts with

Plaintiffs and have violated Article 2 of the Uniform Commercial Code ("UCC"). All

Defendants' breaches have gravely damaged Plaintiffs' business. Plaintiffs are bogged down

with the frustrating task of managing a fleet of dysfunctional taxicabs, relentlessly repairing the

failing vehicles, finding new taxicab drivers to replace drivers who find it too risky to drive the

vehicles, pacifying taxicab drivers who are losing money because the taxis are constantly off the

road being repaired, addressing the citizens of New York who expected safe and functioning

wheelchair-accessible taxicabs, loss of driver shifts, loss of reputation in the community, towing

2

costs, the cost of alternate travel for stranded passengers, damages for lost opportunity of advertising on the tops of the vehicles, and the list of harms goes on and on.

3.     Plaintiffs seek this court's protection from any further wrongdoing by all Defendants, and for money damages to compensate for Defendants' blatant contract and warranty breaches.

## Jurisdiction and Venue

4.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332, because there is complete diversity between the parties, and the amount in controversy exceeds $75,000.00.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, because Plaintiffs' principal place of business is located in this district.

## Parties

6.     Evgeny Freidman resides in, is a citizen of, and is domiciled in and State of New York.

7.     Vladimir Basin resides in, is a citizen of, and is domiciled in and State of New York.

8.     Mamed Dzhaniyev resides in, is a citizen of, and is domiciled in and State of New York.

9.     Plaintiffs Freidman, Basin and Dzhaniyev are the only owners and members of the corporations and LLCs named as Plaintiffs in this case. The LLCs and corporations named as plaintiffs in this case are entities set up as the owners of New York City taxi medallions.

10.     Victory Taxi Garage, Inc., is a New York corporation with offices at 102 Foster Avenue, Brooklyn, NY 11230 with its principal place of business in the State of New York.

11.    Tunnel Taxi Management, LLC, is a limited liability company organized under the laws of the State of New York with offices at 44-07 Vernon Blvd., Long Island City, NY 11101 with its principal place of business in the State of New York.

12.    Downtown Taxi Management, LLC, is a limited liability company organized under the laws of the State of New York with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

13.    Bazar Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

14.    Patron Taxi LLC, is a limited liability company organized under the laws of the State of New York with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

15.    Grappa Taxi LLC, is a limited liability company organized under the laws of the State of New York with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

16.    Cognac Taxi LLC, is a limited liability company organized under the laws of the State of New York with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

17.    Calvados Taxi LLC, is a limited liability company organized under the laws of the State of New York with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

18.    Tequila Taxi LLC, is a limited liability company organized under the laws of the State of New York with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

19.    Jack Daniels Taxi LLC, is a limited liability company organized under the laws of the State of New York with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

20.    Murzik Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

21.    Malinka Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

22.    Yagodka Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

23.    Persik Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

24.    Bratishka Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

25.    Pumo Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

26.    Piguet Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

27.    Kormilitsa Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

28.    Prada Taxi, Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

29.    Student Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

30.    Hublot Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

31.    Torpedo Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

32.    Black Label Taxi LLC, is a limited liability company organized under the laws of the State of New York with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

33.    Praga Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

34.    Two Hump Taxi LLC, is a limited liability company organized under the laws of the State of New York with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

35.    Kroshka Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

36.    Lacoste Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

37.    Sangria Taxi LLC, is a limited liability company organized under the laws of the State of New York with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

38.    Volba Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

39.     Upon information and belief, General Motors is a Delaware corporation whose principal place of business is located at 300 Renaissance Center, Detroit, Michigan 48265. General Motors is in the business of manufacturing and selling automotive vehicles.

40.     Upon information and belief, ElDorado National, Inc., a subsidiary of Thor Industries, is a Kansas corporation, whose principal place of business is located at 1655 Wall St., Salina, Kansas 67401. Upon information and belief, Defendant ElDorado is in the business of manufacturing and retrofitting automotive vehicles and is considered a "Second Stage Manufacturer."

41.     Arcola Sales & Service Corp. is a corporation whose principal place of business is located at 51 Kero Road, Carlstadt, New Jersey 07072. Upon information and belief, Defendant Arcola is in the business of selling automotive vehicles.

## Background

42.     Plaintiffs aver that as a result of the faulty design of the vehicles and Defendants' failed repair attempts, the vehicles Plaintiffs have purchased from Defendants cannot be utilized for reliable, safe, and functioning taxicabs as intended by Plaintiffs at the time of acquisition, and further, that Defendants' warranties have failed their essential purpose.

## Wheelchair-Accessible Taxicabs and Medallions

43.     The New York City taxicab industry is a private industry closely regulated by the New York City Taxi & Limousine Commission (the "TLC"). The TLC was created in 1971 by New York City Council legislation (Local Law 12) to regulate and improve taxi and livery service in New York City and to establish overall transportation policy governing these services. Upon information and belief, there are only 13,148 medallion taxicabs currently authorized to accept hails from passengers within the five boroughs of the New York City.

44.    The TLC is responsible for, *inter alia*, licensing and regulating New York City's medallion (yellow) taxicabs, for-hire vehicles (community-based liveries and black cars), commuter vans, paratransit vehicles (ambulettes), and certain luxury limousines.

45.    A "taxicab medallion" is a metallic symbol affixed to the hood of a New York City taxicab that represents a license from the City, authorizing the operation of a taxicab within the City of New York.  The number of taxicab medallions in New York City is limited by law.  Licensed taxicabs are the only motor vehicles permitted to accept passengers by street hail on the streets of New York City.

46.    Not only is a medallion a license to operate a taxicab and generate income from such operations, but it is also a license to own and operate a small business, to use as security for loans, and to lease the license to other operators for a fee limited by law.  Taxicab licenses may also be transferred to another qualified buyer subject to certain restrictions.

47.    An "Accessible Medallion" is a restricted medallion and is defined as a "a taxicab license valid for use only with a vehicle accessible to a passenger using a wheelchair." R.C.N.Y. § 13-01(a).  Presently, only 144 out of the 13,148 taxicab medallions in New York City are Accessible Medallions.

48.    On or about October 15, 2004, the TLC, auctioned off Accessible Medallions. Plaintiffs bid on and won eleven (11) of these medallions.

49.    On or about June 16, 2006, the TLC auctioned off more Accessible Medallions.  Plaintiffs bid on and won fifty four (54) of these medallions.

50.    The Accessible Medallions purchased by Plaintiffs gave Plaintiffs the right to operate wheelchair-accessible taxicabs in New York City that are licensed to pick up passengers from the street.

8

51.    Upon information and belief, until in or around late 2006 the TLC had approved only one brand of vehicle for wheelchair-accessible purposes -- the Chevrolet Uplander. Arcola was authorized to advertise and sell Uplanders that General Motors and ElDorado manufactured as accessible to wheelchairs.

52.    Upon information and belief, all Defendants had presented this vehicle to the TLC for the TLC's approval for use of the retrofitted Uplander as a wheelchair-accessible taxi. The TLC approved the vehicle since the vehicle's specifications met the appropriate TLC requirements and ADA standards, then listed Defendant Arcola as an authorized dealer of these approved vehicles. Defendants advertised to the public that ElDorado's retrofitted vehicles were suitable for use as New York City taxicabs.


**The Retrofitting**

53.    Upon information and belief, General Motors, ElDorado and Arcola were all working together to get Plaintiffs with the vehicles sold to Plaintiffs. General Motors provided ElDorado with the Chevrolet Uplander frame. Based on General Motors' design, ElDorado then retrofitted the vehicles for wheelchair-accessibility at its factory in Kansas. Once the vehicles were retrofitted, the vehicles were delivered to Arcola for final delivery to the customers.

54.    Upon information and belief, as directed by General Motors, ElDorado made substantial changes to the vehicle which involved extensive cutting to the body structure, including lengthening and lowering of vehicle components to accommodate wheelchair riding occupants entry into the vehicle.

9

55.    Upon information and belief, General Motors also provided "original equipment manufacturer" (OEM) support as well as assistance to ElDorado both in producing and repairing ElDorado's failed retrofitting.

56.    Defendants advertised and warranted to Plaintiffs that the Uplanders complied with the American Disabilities Act (ADA), the Administrative Code of the City of New York, and the TLC wheelchair-accessibility requirements.

57.    In or around late 2006, Plaintiffs ordered fifty-two (52) retrofitted Chevrolet Uplanders from Arcola, ElDorado and General Motors. Plaintiffs understood from the advertisements and from conversations with Defendant that the vehicles were to be retrofitted by ElDorado and General Motors pursuant to the TLC specifications for wheelchair-accessible taxicabs, just as the parties advertised and warranted to Plaintiffs.

58.    Plaintiffs signed "Orders" for the vehicles with Arcola, since Arcola was permitted to sell the retrofit vehicles. The Orders specified, as Defendants agreed to do during emails and other communications, that as part of the retrofitting process, Defendants would make the vehicles functional and prepared to serve as NYC taxis. Plaintiffs paid additional costs so that the vehicles would contain taxicab walls, taxicab swing-in ramps, and the classic yellow paint that is found on New York City taxicabs.

59.    Upon information and belief, the delivery of the vehicles was delayed by problems with the manufacture and retrofitting process. Throughout the delay, representatives from ElDorado and General Motors were communicating with Plaintiffs regarding the delay.

60.    Once the vehicles started to fail, Plaintiffs were contacting representatives of all three Defendants regarding the failures.

61.     Throughout the period that the vehicles were experiencing complications, all of the Defendants knew about the vehicles' failures and were involved in the failed repair and re-engineering process. Upon information and belief, in or around the end of 2007, General Motors and ElDorado designed a global repair to fix the retrofitted Uplanders' many problems. However, the design "fix" was too late to overcome the extensive damage that had already occurred because of Defendants' negligent manufacture and design.

62.     Upon information and belief, General Motors has discontinued the particular design of the Chevrolet Uplander that Plaintiffs' purchased for use as taxicabs.

**The Failed Repairs**

63.     Despite Defendants' assurances, advertisements, brochures, certificates and express and implied warranties, Plaintiffs received defective vehicles that were constantly failing.

64.     Upon information and belief, ElDorado's retrofitting design for the purpose of wheelchair-accessibility severely compromised critical components of the Uplander, such as the rear suspension, the transmission and the sliding door system. The harm to each of these further negatively impacted other of the vehicles' parts.

65.     Upon information and belief, in designing and manufacturing the vehicles Defendants did not sufficiently test and/or properly engineer the vehicles or Defendants would have detected these substantial flaws.

66.     As a result of Defendants' negligent engineering and manufacture, the following common problems occurred: (a) the axles separated from the chassis, (b) doors fell from the hinges, at times while the vehicle was in motion, (c) faulty engine mounts came loose,

11

(d) problems with defective trailing arm bushings occurred, (e) transmission failures occurred, and (f) problems occurred with the vehicles' on-board diagnostic technology ("OBD").

67.     Each of the vehicles has required several repairs, and since early 2007, Plaintiffs have had to employ a tow truck more than 300 times to transport broken-down wheelchair-accessible taxis to repair shops.

68.     Because each of the vehicles required extensive repairs, each of the vehicles was removed more than one time from the road for vehicle repairs, as well as to avert further breakdowns.

69.     As a result of the repeated repairs and Plaintiffs' inability to use the vehicles, Plaintiffs have lost in total more than 7,820 shifts, at a loss of revenue of more than $2,000,000.

70.     As a further result of the numerous safety problems with the taxis, taxi drivers have refused to drive these vehicles and these drivers have sought to drive taxicabs belonging to other owners.

71.     Although Plaintiffs immediately notified all Defendants of the vehicles' problems, Plaintiffs had to make multiple phone calls and send the three Defendants numerous letters and e-mails before any Defendants moved forward toward fixing the defective retrofitting.

72.     Though Defendants' technicians eventually performed makeshift repairs on the vehicles, the vehicles were so critically defective that even Defendants could not maintain sufficient manpower to address the defects.

73.     Upon information and belief, Defendants' technicians would repair the immediate failures, but this did could not stop further damage from occurring. The technicians' repairs caused further damage. Upon information and belief, the technicians did not directly

12

advise Plaintiffs that the suspension, as altered by Defendants' design, was causing damage to the vehicle.

74.    Upon recognizing that Defendants had made critical errors in the manufacture, design, and sale of the retrofitted vehicle, Plaintiffs demanded return of their money and demanded that Defendants remove all of the defective vehicles from Plaintiff and that Defendants refund him for the cost of the faulty vehicles. Defendants refused all of Plaintiffs' demands.

75.    Plaintiffs have deposited the vehicles with Defendant Arcola.

## FIRST CAUSE OF ACTION
### (Breach of Contract Against Defendant Arcola)

76.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "71" above.

77.    The Bills of Sales between Plaintiffs and Arcola for the sales of the Chevrolet Uplanders were valid and enforceable.

78.    The sales agreements reflected the bargain between and amongst Plaintiffs and Arcola, and incorporated promises made by Defendants General Motors and ElDorado, for the purchase of vehicles to serve as taxicabs with specific components for wheelchair-accessibility.

79.    At all times relevant herein, Plaintiffs have fully performed their obligations under the foregoing agreements.

80.    The Bills of Sale signed by Arcola provide that "Seller will defend the Buyer against any and all lawful claims and demands whatsoever in relation to this bill of sale."

81.　Pursuant to the sales agreements, Defendant Arcola agreed to provide Plaintiffs with new Chevrolet Uplanders retrofitted in a condition fit for use as wheelchair-accessible taxicabs.

82.　As received by Plaintiffs, the vehicles were defective, and were not capable of meeting the standards of quality and performance for a vehicle of its kind.

83.　Plaintiffs, on numerous occasions, gave Defendant Arcola timely notice of the vehicles' defects; nevertheless, the repairs were never able to cure the fundamental defects of the basic engineering flaws, as designed and manufactured by Defendants ElDorado and General Motors.

84.　Plaintiffs have not been able to, and will never be able to, reap the benefit of their bargain.

85.　Defendant Arcola has breached the sales agreements with Plaintiffs.

86.　By reason of the foregoing, Plaintiffs have suffered damages, including but no less than the amount paid for the vehicles, $3,000,000, and consequential and incidental damages, in an amount to be determined at trial but believed to be no less than $3,000,000.

## SECOND CAUSE OF ACTION
### (Breach of Warranty)

87.　Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "81" above.

88.　The vehicles constitute "goods" within the meaning of Article 2 of the Uniform Commercial Code as adopted in New York. Defendants, merchants of vehicles, sold the vehicles to Plaintiffs.

14

89.     Each Defendant affirmatively represented through conversations, brochures, advertisements and in other forms, to Plaintiffs that the vehicles would properly operate. These representations constituted express warranties within the meaning of the UCC.

90.     At the time that Defendants made these representations, Defendants knew or should have known that Plaintiffs would rely on their representations in deciding whether to purchase the vehicles.

91.     Plaintiffs did rely on Defendants' representations that the vehicles had been correctly designed, manufactured and retrofitted for customers in wheelchairs and would be able to function properly. If Defendants had truthfully represented the unfit nature of the vehicles, clearly, Plaintiffs would not have purchased the vehicles.

92.     Defendants' negligent design and manufacture compromised critical components of the Chevrolet Uplanders, and the resulting vehicles were not in the condition fit for use as wheelchair-accessible taxicabs.

93.     By reason of the foregoing, Defendants have breached their express warranties to Plaintiffs.

94.     As a direct and proximate cause of the breach of express warranty, Plaintiffs have been damaged in an amount to be determined at trial, but believed to be no less than $3,000,000.

### THIRD CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability)

95.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "95" above.

96.     The vehicles constitute "goods" within the meaning of Article 2 of the Uniform Commercial Code. Defendants are merchants of vehicles purchased by Plaintiffs.

15

97. Defendants impliedly warranted the vehicles to be of merchantable quality.

98. Defendants all knew or should have known that the vehicles were ordered by Plaintiffs for use as wheelchair-accessible taxicabs.

99. Defendants breached the implied warranty of merchantability by providing vehicles that could not be used by Plaintiffs because the vehicles malfunctioned and no repair could correct the vehicles.

100. As a direct and proximate result of Defendants' breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be determined at trial, but believed to be no less than $3,000,000.

### FOURTH CAUSE OF ACTION
#### (Breach of Implied Warranty for a Particular Purpose)

101. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "89" above.

102. The vehicles constitute "goods" within the meaning of Article 2 of the Uniform Commercial Code. Defendants are merchants of vehicles purchased by Plaintiffs.

103. At the time that Defendants sold the vehicles to Plaintiffs, Defendants knew or had reason to know that Plaintiffs intended to use the vehicles as taxicabs. Defendants committed to design, manufacture and retrofit the vehicles, to paint the vehicles yellow, and to include classic elements of New York city taxis such as marking the vehicles with the New York City taxi logo. These vehicles were specially retrofitted to meet the standards of the NYC taxi industry, and to comply with TLC regulations.

104. The sales agreements reflected the bargain between and amongst the parties for vehicles to serve as taxicabs with wheelchair-accessibility in New York City.

16

Defendants provided an implied warranty of fitness for the particular purpose as functional New York City wheelchair-accessible taxicabs.

105.    Defendants have breached the warranty of fitness for a particular purpose because the vehicles they sold to Plaintiffs were defective, were not fit for use as wheelchair-accessible taxicabs, and have caused Plaintiffs tremendous damage.

106.    As a direct and proximate result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiffs have been damaged in an amount to be determined at trial, but believed to be no less than $3,000,000.

WHEREFORE, Plaintiffs Evgeny A. Freidman, Vladimir Basin, Mamed Dzhaniyev, Victory Taxi Garage, Inc., Tunnel Taxi Management, LLC, Downtown Taxi Management, LLC, Bazar Taxi Inc., Patron Taxi LLC, Grappa Taxi LLC, Cognac Taxi LLC, Calvados Taxi LLC, Tequila Taxi LLC, Jack Daniels Taxi LLC, Murzik Taxi Inc., Malinka Taxi Inc., Yagodka Taxi Inc., Persik Taxi Inc., Bratishka Taxi Inc., Pumo Taxi Inc., Piguet Taxi Inc., Kormilitsa Taxi Inc., Prada Taxi, Inc., Student Taxi Inc., Hublot Taxi Inc., Torpedo Taxi Inc., Black Label Taxi LLC, Praga Taxi Inc., Two Hump Taxi LLC, Kroshka Taxi Inc., Lacoste Taxi Inc., Sangria Taxi LLC, Volba Taxi Inc., demand the entry of judgment against Defendants General Motors Corp., ElDorado National Inc., and Arcola Sales & Service Corp. awarding them as follows:

A. On the first cause of action, damages, including consequential and incidental damages, as a result of Defendant Arcola's breach of contract in an amount to be determined at trial, but no less than $3,000,000, and;

B.  On the second cause of action, damages, including consequential and incidental damages, as a result of breaching the express warranty in an amount to be determined at trial, but no less than $3,000,000, and;

C.  On the third cause of action, damages, including consequential and incidental damages, as a result of breaching the implied warranty of merchantability in an amount to be determined at trial, but no less than $3,000,000, and;

D.  On the fourth cause of action, damages, including consequential and incidental damages, as a result of breaching the implied warranty of fitness for a particular purpose in an amount to be determined at trial, but no less than $3,000,000, and;

E.  For such other and further relief as the Court deems just and proper.


Dated: New York, New York
       June 9, 2008


                              HERRICK, FEINSTEIN LLP


                              By:_____
                                  William Fried
                                  Inbal Baum
                                  Attorneys for Plaintiffs
                                  2 Park Avenue
                                  New York, New York 10016
                                  (212) 592-1400
                                  wfried@herrick.com
                                  ibaum@herrick.com

18