HERRICK, FEINSTEIN LLP
William Fried
Inbal Baum
Attorneys for Plaintiffs
2 Park Avenue
New York, New York 10016
212.592.1400
wfried@herrick.com
ibaum@herrick.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Electronically Filed Document

EVGENY A. FREIDMAN, VLADIMIR BASIN, MAMED DZHANIYEV, Victory Taxi Garage Inc., Tunnel Taxi Management, LLC, Downtown Taxi Management, LLC, Bazar Taxi Inc., Patron Taxi LLC, Grappa Taxi LLC, Cognac Taxi LLC, Calvados Taxi LLC, Tequila Taxi LLC, Jack Daniels Taxi LLC, Murzik Taxi Inc., Malinka Taxi Inc., Yagodka Taxi Inc., Persik Taxi Inc., Bratishka Taxi Inc., Pumo Taxi Inc., Piguet Taxi Inc., Kormilitsa Taxi Inc., Prada Taxi, Inc., Student Taxi Inc., Hublot Taxi Inc., Torpedo Taxi Inc., Black Label Taxi LLC, Praga Taxi Inc., Two Hump Taxi LLC, Kroshka Taxi Inc., Lacoste Taxi Inc., Sangria Taxi LLC, Volba Taxi Inc.,

Plaintiffs,

-against-

GENERAL MOTORS CORP., ELDORADO NATIONAL, INC., and ARCOLA SALES & SERVICE CORP.,

Defendants.

08-CV-02458 (SAS)

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' PRE-ANSWER MOTION TO DISMISS PLAINTIFFS' VERIFIED COMPLAINT

Table of Contents

PRELIMINARY STATEMENT ....................1

STATEMENT OF FACTS ....................3

STANDARD OF REVIEW ....................3

ARGUMENT ....................5

POINT I

Plaintiffs Meet the Requirements for Diversity Citizenship ....................5

POINT II

Plaintiffs Have Sufficiently Alleged Causes of Action for Breach of Express and Implied Warranties ....................6

a. The Complaint Sufficiently Alleges That Defendants Breached Warranties ....................6

b. Plaintiffs Were in Privity With Defendants ....................9

c. The Complaint Sufficiently Alleges That Defendants Have Breached Implied Warranties ....................9

CONCLUSION ....................12

# Table of Authorities

## Federal Cases

*Abraham v. Volkswagen of America, Inc.*
795 F.2d 238 (2d Cir. 1986)....10

*Adesina v. Aladan Corp.*
38 F.Supp.2d 329 (S.D.N.Y. 2006) ....6

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)....3

*Cohen v. Koenig*,
25 F.3d 1108 (2d Cir. 1994)....4

*Conley v. Gibson*
355 U.S. 41 (1957)....4

*Factory Associates & Exporters, Inc. v. Lehigh Safety Shoe Co. LLC*
2008 U.S. Dist. LEXIS 8112, *10 (N.D.N.Y. 2008) ....10

*Franks's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*
86 Ill. App.3d 980 (1980) ....9

*Gant v. Wallingford Bd. of Educ.*
69 F.3d 669 (2d Cir. 1995)....4

*Grandon v. Merrill Lynch & Co.*
147 F.3d 184 (2d Cir. 1998)....3

*Henry v. Rehab Plus, Inc.*
404 F.Supp.2d 435 (E.D.N.Y. 2005) ....9, 10

*Int'l Audiotext Network, Inc. v. American Telephone & Telegraph Co.*
62 F.3d 69, 1995-2 Trade Cases P 71,093 (2d Cir. 1995) ....8

*Ketterer v. Armour & Co.*
200 F. 322 (S.D.N.Y 1912)....10

*Langford v. Chrysler Motors Corp.*
373 F.Supp. 1251, 14 U.C.C. Rep. Serv. 1141 (E.D.N.Y. 1974)
judgment aff'd, 513 F.2d 1121 (2d Cir. 1975)....9

*Leveraged Leasing Admin. Corp. v. Pacificorp Capital, Inc.*
87 F.3d 44, 29 UCC Rep.Serv.2d 1162 (2d Cir. 1996)....................................................5

*Mills v. Polar Molecular Corp.*
12 F.3d 1170 (2d Cir. 1993)..........................................................................................4

*Reynolds v. Wohl*
32 F.Supp.2d 653 (S.D.N.Y. 2004) ...............................................................................5

*Riverside Marketing, LLC v. Signaturecard, Inc.*
25 F.Supp.2d 523 (S.D.N.Y. 2006) ...............................................................................5

*Sims v. Artuz*
230 F.3d 14 (2d Cir. 2000).............................................................................................3

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,*
30 F.Supp.2d at 398 (S.D.N.Y. 2002)........................................................................3, 6

*Spiegel v. Saks 34th Street*
43 Misc. 2d 1065 (1964), order aff'd by 26 A.D.2d 660 (1966) .......................................7

*Swierkiewicz v. Sorema N.A.*
34 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).....................................................6, 8

*Tarshis v. Riese Org.*
211 F.3d 30 (2d Cir. 2000).............................................................................................3

*TRGO v. Chrylser Corp.*
34 F.Supp.2d 581 (N.D. Ohio 1998)...............................................................................8

*Weinstein v. Albright*
261 F.3d 127 (2d Cir. 2001)...........................................................................................4

*Weizmann Institute of Science v. Neschis*
229 F.Supp.2d 234, RICO Bus.Disp.Guide 10,384 (S.D.N.Y. 2002) ...............................3

State Cases

*Friedman v. Medtronic, Inc.*
42 A.D.2d 185, 345 N.Y.S.2d 637 (2d Dep't. 1973)........................................................7

*Leon v. Martinez*
84 N.Y.2d 83 (1994) .......................................................................................................3

*Randy Knitwear v. American Cyanamid Co.*
11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (1962)..................................................9

Statutes

Fed. R. Civ. P. 12(b)(6) .......... 3, 4

Fed. R. Civ. P. 8(a) .......... 4, 6

28 U.S.C.A. §1332 .......... 5

N.Y. U.C.C. §2-313(2) .......... 6

N.Y. U.C.C. § 2-714 .......... 8

## PRELIMINARY STATEMENT

Plaintiffs' complaint tells a straightforward story: Plaintiffs communicated with Defendants General Motors and ElDorado as the parties were developing a vehicle that would meet the New York City Taxi and Limousine Commission's ("TLC") specifications for wheelchair-accessible taxicabs that would be suitable for servicing passengers in New York City. General Motors and ElDorado worked with the TLC and Plaintiffs -- who are the owners of a substantial number of New York City taxi medallions -- to create a functional product, particularly because General Motors and ElDorado had a vested interest in the taxis' success. Freidman Aff. at ¶12. Both General Motors and ElDorado were aware that Plaintiffs would be the purchasers of a large number of the vehicles. Freidman Aff. at ¶14.

Despite General Motors' and ElDorado's efforts to color this purchase as a typical run of the mill automobile purchase, this is certainly not the case as this was an expensive enterprise which Plaintiffs stepped into with great caution. Plaintiffs entered the unique territory of the wheelchair-accessible taxi arena with such caution because these sorts of taxis had never before been used on the roads in New York City. Plaintiffs were encouraged by the assurances from the TLC and those made by Defendants. With Defendants' assurances that they could provide Plaintiffs with functional taxis, Plaintiffs chose to bid on, then won, a large percentage of the available restricted medallions. Complaint at ¶48, ¶49 and ¶51; Freidman Aff. at ¶13. For this reason, General Motors and ElDorado worked with Plaintiffs to provide the taxis. Regrettably, the result was not as promised.

Defendants now seek to escape liability -- through a pre-answer motion -- for the vehicles they manufactured, designed and retrofitted for Plaintiffs' use by claiming that Plaintiffs were not known third-party beneficiaries. This is patently false; Defendants knew who had

purchased the vehicles and knew the intended purpose for the vehicles. As a result of Plaintiffs' inability to utilize the vehicles that Defendants created for Plaintiffs' taxi business, Plaintiffs have been severely damaged.

In the complaint Plaintiffs request damages to compensate for the losses suffered in relation to the dysfunctional vehicles created by Defendants General Motors and ElDorado.[1] Not only did Defendants provide Plaintiffs with assurances that the vehicles would function properly from the outset, but once the vehicles were not functioning properly, both General Motors and ElDorado committed to repairing and redesigning the vehicles. However, despite several attempts, General Motors and ElDorado were unable to successfully correct the overriding problems inherent in the poor design and manufacture of the vehicles. Complaint at ¶¶60-71. As a result, Plaintiffs were left with vehicles that were simply too dangerous to service passengers.

Accordingly, as discussed herein, General Motors' and ElDorado's motions to dismiss should be rejected in their entirety.[2]

---

[1] This Memorandum of Law addresses both Defendant General Motors and Defendant ElDorado National, Inc.'s motions to dismiss simultaneously.

[2] If, however, the Court does grant Defendants' motions to dismiss in whole or part, Plaintiff requests that the dismissal be without prejudice, affording Plaintiff the opportunity to further amend the Complaint to cure any perceived defects.

**STATEMENT OF FACTS**

The facts relevant to this pre-answer motion to dismiss are the well-pleaded allegations of the Complaint, the First Amended Complaint ("FAC"), and the attached affidavits and exhibits, which are presumed to be true and are construed in the light most favorable to plaintiff. *Leon v. Martinez*, 84 N.Y.2d 83, 87. 638 N.E.2d 511, 614 N.Y.S.2d 972 (1994).

**STANDARD OF REVIEW**

A motion to dismiss should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F.Supp.2d 392 (S.D.N.Y. 2002) (Scheindlin, J.) (citing *Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir. 2000)). In deciding at the 12(b)(6) stage, the issue in front of the court is not whether Plaintiffs are likely to prevail ultimately, but whether the Plaintiffs are entitled to offer evidence to support the claims. *Id.* (citing *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000)). The facts set forth in the Complaint, and in any affidavits in opposition to the motion, must be presumed to be true, and the pleader must be accorded the benefit of every possible favorable inference. *Weizmann Institute of Science v. Neschis*, 229 F.Supp.2d 234, RICO Bus.Disp.Guide 10,384 (S.D.N.Y. 2002) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)) ("On a motion to dismiss, the court must consider not only the complaint, but also matters fairly incorporated within it and matters susceptible to judicial notice . . . this can include document attached to the complaint as an exhibit or incorporated in it by reference, and documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."); *Grandon v. Merrill Lynch &*

*Co.*, 147 F.3d 184, 188 (2d Cir. 1998); *Mills v. Polar Molecular Corp.*; 12 F.3d 1170, 1174 (2d Cir. 1993); *Cohen v. Koenig*, 25 F.3d 1108 (2d Cir. 1994).

The standard on Defendants is demanding: the Court must accept all allegations of material fact as true and construe all reasonable inferences in Plaintiffs' favor. *Weinstein v. Albright*, 261 F.3d 127, 113 (2d Cir. 2001). Moreover, a district court may not dismiss a complaint under Fed. R. Civ. P. 12(b)(6) unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995).

Plaintiffs are not required to set out in detail the facts upon which they base their claims; to the contrary, the Rules require only a short and plain statement of the claim that will give the defendant fair notice of Plaintiffs' claims and the grounds upon which they rest. Fed. R. Civ. P. 8(a); *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Accordingly, Defendants General Motors and ElDorado have no basis for dismissal here because, as demonstrated herein, Plaintiffs have sufficiently pled facts that would make Defendants liable under multiple causes of action.[3]

[3] In the First Amended Complaint Plaintiffs have voluntarily withdrawn the breach of contract claim and injunction claim against Defendants General Motors and ElDorado that were pleaded in the original complaint.

**ARGUMENT**

**POINT I**

**PLAINTIFFS MEET THE REQUIREMENTS FOR DIVERSITY CITIZENSHIP**

To maintain an action based on diversity of citizenship, Plaintiffs must (i) be diverse from the Defendants and (ii) meet the amount-in-controversy requirement. 28 U.S.C.A. §1332; *Riverside Marketing, LLC v. Signaturecard, Inc.*, 425 F.Supp.2d 523 (S.D.N.Y. 2006); *Reynolds v. Wohl*, 332 F.Supp.2d 653 (S.D.N.Y. 2004). This federal court therefore has subject matter jurisdiction over this action because it has been brought by individuals, corporations and LLCs who are all domiciled in New York against non-New York corporations with diverse citizenship, and the amount in controversy exceeds the jurisdictional minimum.

Though Defendants take issue with the citizenship of the Plaintiffs, Plaintiff Freidman has clarified Plaintiffs' domicile and citizenship in the attached affidavit. Freidman Aff.; *Leveraged Leasing Admin. Corp. v. Pacificorp Capital, Inc.*, 87 F.3d 44, 47, 29 UCC Rep.Serv.2d 1162 (2d Cir. 1996) (stating that the averments of diversity of citizenship may be in the pleadings, or with "equal distinctness in other parts of the record."). Plaintiffs Freidman, Basin and Dzhaniyev are each domiciled in New York. See accompanying Affidavit of Evgeny A. Freidman in Opposition to Defendants' Motions to Dismiss ("Freidman Aff.") at ¶3, ¶6. Each of the Plaintiff LLCs has its principal place of business in New York, each of the LLCs' members are citizens of New York. Freidman Aff. at ¶6, ¶7.

Additionally, this jurisdictional matter has been resolved in Plaintiffs' First Amended Complaint (the "FAC").[4]

---

[4] To the extent there are deficiencies in the pleading, the Plaintiffs have resolved these in their FAC by alleging individual domicile and the principal place of business and members of the LLCs.

## POINT II

## PLAINTIFFS HAVE SUFFICIENTLY ALLEGED CAUSES OF ACTION FOR BREACH OF EXPRESS AND IMPLIED WARRANTIES

Allegations of breach of warranty claims need only meet the standards of Federal Rule of Civil Procedure 8(a). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (stating that simplified pleading standard applies to all civil actions, with limited exceptions such as fraud). The courts also remind Plaintiffs that "they don't have to file long complaints, don't have to plead facts, don't have to plead legal theories" in their Complaint. *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F.Supp.2d at 398 (S.D.N.Y. 2002) (Scheindlin, J.). Accordingly, Plaintiffs' complaint meets this requirement; the Complaint contains short, plain statements that allege facts to merit relief from Defendants' breaches and that put Defendants on notice of these charges against them. Plaintiffs have sufficiently alleged: (a) that Defendant General Motors and Defendant ElDorado provided warranties to Plaintiffs that were breached, (b) that there was privity between Defendants and Plaintiffs, and (c) that Defendants General Motors and ElDorado breached implied warranties.

### a. The Complaint Sufficiently Alleges That Defendants Breached Warranties

Under New York law an express warranty is created by any "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." N.Y. U.C.C. §2-313(2); *Adesina v. Aladan Corp.*, 438 F.Supp.2d 329 (S.D.N.Y. 2006) (stating that a plaintiff alleging a breach of express warranty under New York law does not have to prove a "defect," but instead, must prove that the product did not perform in accord with a promise voluntarily made by the defendant.).

In this case, Plaintiffs were provided brochures, certificates, and other statements by both General Motors and ElDorado which advertised that the vehicles are suitable for General Motors and ElDorado mobility customers. *See* Friedman Aff at ¶12, ¶13, ¶16, and ¶18. Defendants specifically provided these warranties to Plaintiffs to assure Plaintiffs that an investment in the vehicles would result in functional and safe taxicabs. Under New York law, where the representation of safety or harmlessness is both specific and unambiguous, it will be found to create an express warranty reaching to the full extent of the representation. *Friedman v. Medtronic, Inc.*, 42 A.D.2d 185, 345 N.Y.S.2d 637 (2d Dep't. 1973) (under New York law, an express warranty is created when the seller makes and affirmation of fact or promise, "the nature tendency of which is to induce the buyer to purchase"); *Spiegel v. Saks 34th Street*, 43 Misc. 2d 1065 (1964), order aff'd by 26 A.D.2d 660 (1966) (finding that an advertisement that skin cream was 'safe' for anyone who purchased it was a warranty in effect.). Accordingly, under New York law, General Motors' and ElDorado's representations to Plaintiffs were express warranties.

Further, Plaintiffs' expectations did not come from thin air. Rather, both General Motors and ElDorado provided Plaintiffs with unambiguous assurances that the vehicles would be safely designed for transportation of not only ordinary passengers but for passengers that required wheelchair-accessibility. Complaint at ¶51, ¶55, ¶84. In fact, Plaintiffs had little choice of which vehicles to purchase. The retrofit Uplanders was the only brand of vehicle approved by the TLC for use with restricted medallions. Complaint at ¶50. "Restricted medallions" meant that the medallions could only be used with a vehicle accessible to a passenger using a wheelchair. Complaint at ¶46. Although Plaintiffs have not yet had the opportunity to conduct discovery, it is likely that in discovery Plaintiffs will be able to show that General Motors and

ElDorado had an agreement to provide these certain vehicles *specifically* for Plaintiffs' use as NYC taxicabs.

General Motors and ElDorado argue that Plaintiffs did not adequately plead support for their warranty claims and that Plaintiffs were required to attach to the complaint any alleged contract or warranty. *See* General Motors Memo. at pg.5; ElDorado Memo at pg.3. This argument is patently false and the necessary facts have been sufficiently pled by Plaintiffs. *See* Freidman Aff at ¶12, ¶16. The court should find that the allegations in the Complaint are sufficient, particularly because Plaintiffs are not required to attach any contracts or warranties to the Complaint. *See*, *e.g.*, *Int'l Audiotext Network, Inc. v. American Telephone & Telegraph Co.*, 62 F.3d 69, 1995-2 Trade Cases P 71,093 (2d Cir. 1995) (Even when the parties had not attached a document or incorporated it by reference, the court nevertheless considered the document because it was integral to the complaint.). Moreover, discovery may also help uncover further facts to support Plaintiffs' claim. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("It thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits….").

General Motors and ElDorado breached the warranties provided to Plaintiffs because the vehicles do not function properly, and where a warranty is breached, buyers are entitled to recover the difference in value caused by that breach. N.Y. U.C.C. § 2-714. *See also, TRGO v. Chrysler Corp.*, 34 F.Supp.2d 581 (N.D. Ohio 1998) (citations omitted) ("If, after repeated repairs, a vehicle fails to operate as should a new vehicle, the repair remedy fails of its essential purpose."). Plaintiffs have sufficiently alleged breach of warranties and are therefore

entitled to the damages caused by Defendant General Motors' and Defendant ElDorado's respective breaches.

**b. Plaintiffs Were in Privity With Defendants**

Even if the court finds no direct agreement leading to warranties, an 'out-of-privity' buyer suffering economic loss may still prevail upon a showing that the manufacturer was aware of the parties particular purpose to be made of the product, and proceeded nevertheless to provide a product unsuited to that use. *Randy Knitwear v. American Cyanamid Co.*, 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (1962). It has, therefore, been held that when the manufacturer knows "the identity, purpose, and requirements of the dealer's customer, and manufactured or delivered the good specifically to meet those requirements," recovery of economic losses should be permitted, even absent privity. *See, e.g.*, *Henry v. Rehab Plus, Inc.* 404 F.Supp.2d 435, 443 (E.D.N.Y. 2005) ("In New York, privity is no longer required for recovery under a theory of breach of implied warranty."); *Franks's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App.3d 980, 992-93 (1980). Therefore, under New York law, since General Motors and ElDorado made promises directly for Plaintiffs' benefit, as alleged herein, they are liable for breach of these promises, regardless of contractual privity between the parties.

**c. The Complaint Sufficiently Alleges That Defendants Have Breached Implied Warranties**

Under New York law, if an article is of such a character that even when used for the purpose for which it was made it is likely to be a source of danger to several or many people if not properly designed and fashioned, the manufacturer as well as the dealer is liable, for breach of implied warranties, to the persons whose use is contemplated. *Langford v. Chrysler Motors*

*Corp.*, 373 F.Supp. 1251, 1254, 14 U.C.C. Rep. Serv. 1141 (E.D.N.Y. 1974), judgment aff'd, 513 F.2d 1121 (2d Cir. 1975); *Ketterer v. Armour & Co.*, 200 F. 322 (S.D.N.Y 1912) ("The remedies of injured consumers ought not to be made to depend upon the intricacies of the law of sales. The obligation of the manufacturer should not be based alone upon privity of contract.") Here, an implied warranty of fitness for particular use arose because Defendants General Motors and ElDorado knew of the particular purpose for which Plaintiffs required the goods, and knew or should have known that Plaintiffs were relying on Defendants' special knowledge regarding wheelchair-accessible vehicles. *See* Complaint at ¶92. *See, e.g., Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238 (2d Cir. 1986); *Factory Associates & Exporters, Inc. v. Lehigh Safety Shoe Co. LLC*, 2008 U.S. Dist. LEXIS 8112, *10 (N.D.N.Y. 2008) (stating that the inquiry is focused on consumer expectations); *Henry v. Rehab Plus, Inc.* 404 F.Supp.2d 435 (E.D.N.Y. 2005).

Plaintiffs have alleged that General Motors and ElDorado knew the intended purpose for these vehicles, and that as a result of the design and manufacturing problems -- the axles falling off, the doors coming open mid-ride, and the electronic parts not functioning -- the vehicles were not reasonably fit for the purpose intended, namely to safely provide taxi riders in New York with a wheelchair accessible option. Complaint at ¶¶55-71. General Motors and ElDorado attempt to paint themselves as remote manufacturers, yet in this case, representatives from both parties were communicating directly with Plaintiffs regarding the vehicles. Freidman Aff. at ¶12, ¶17. Representatives of General Motors and ElDorado worked directly to ascertain Plaintiffs' needs both prior to Plaintiffs' purchases, and after the purchases when the design and manufacture problems were discovered. Complaint at ¶58, ¶70; Freidman Aff at ¶12, ¶14, ¶15.

Indeed, General Motors and ElDorado were actively involved in efforts to create a global fix for Plaintiffs' entire fleet. Complaint at ¶58. Plaintiffs have no expertise with manufacturing wheelchair-accessible vehicles. Therefore, Plaintiffs relied entirely on General Motors' and ElDorado's expertise to create vehicles for the intended purpose: wheelchair accessible taxis. General Motors and ElDorado not only manufactured the vehicles, they painted the vehicles with the signature yellow taxicab color, and were responsible for the "hack-up" design that is intended to suit the purposes of (i) wheelchair accessibility, and (ii) use as a taxicab. Complaint at ¶57, ¶92. The intended purpose for the vehicles -- wheelchair accessible taxis -- was not supplied by Defendants. Defendants committed to create vehicles that mobility customers could enter when riders hailed the vehicles from the street. Instead Defendants created a safety hazard as the doors were apt to open mid-ride and vehicles parts would malfunction mid-ride. Complaint at ¶63. Plaintiffs were forced to remove the vehicles from the roads in order to avoid injury to riders. Freidman Aff. at ¶20. As such, Plaintiffs were not provided vehicles fit for their intended use.

**CONCLUSION**

For all the foregoing reasons, Defendants General Motors' and ElDorado's pre-answer motions to dismiss should be denied in all respects.

Dated: New York, New York
June 9, 2008

Respectfully submitted,

HERRICK, FEINSTEIN LLP
Attorneys for Plaintiffs

By: /s/ William Fried

William Fried
Inbal Baum
Herrick, Feinstein LLP
2 Park Avenue
New York, New York 10016
212.592.1400
wfried@herrick.com
ibaum@herrick.com