William Fried
Inbal Baum
Attorneys for Plaintiffs
2 Park Avenue
New York, New York 10016
(212) 592-1400
wfried@herrick.com
ibaum@herrick.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

EVGENY A. FREIDMAN, VLADIMIR BASIN,  :
MAMED DZHANIYEV, Victory Taxi Garage Inc., :     Civ. No. 08-CV-02458 (SAS)
Tunnel Taxi Management, LLC, Downtown Taxi :
Management, LLC, Bazar Taxi Inc., Patron Taxi :  **FIRST AMENDED COMPLAINT**
LLC, Grappa Taxi LLC, Cognac Taxi LLC,      :
Calvados Taxi LLC, Tequila Taxi LLC, Jack   :
Daniels Taxi LLC, Murzik Taxi Inc., Malinka Taxi : **JURY TRIAL DEMANDED**
Inc., Yagodka Taxi Inc., Persik Taxi Inc., Bratishka :
Taxi Inc., Pumo Taxi Inc., Piguet Taxi Inc.,  :
Kormilitsa Taxi Inc., Prada Taxi, Inc., Student Taxi :
Inc., Hublot Taxi Inc., Torpedo Taxi Inc., Black :
Label Taxi LLC, Praga Taxi Inc., Two Hump Taxi :
LLC, Kroshka Taxi Inc., Lacoste Taxi Inc., Sangria :
Taxi LLC, Volba Taxi Inc.,                   :

            Plaintiffs,               :
                        :
   -against-                            :
                        :
GENERAL MOTORS CORP., ELDORADO       :
NATIONAL, INC., and ARCOLA SALES &   :
SERVICE CORP.,                       :
                        :
            Defendants.              :

------------------------------X

Plaintiffs Evgeny A. Freidman, Vladimir Basin, Mamed Dzhaniyev, Victory Taxi

Garage, Inc., Tunnel Taxi Management, LLC, Downtown Taxi Management, LLC, Bazar Taxi

Inc., Patron Taxi LLC, Grappa Taxi LLC, Cognac Taxi LLC, Calvados Taxi LLC, Tequila Taxi

LLC, Jack Daniels Taxi LLC, Murzik Taxi Inc., Malinka Taxi Inc., Yagodka Taxi Inc., Persik

Taxi Inc., Bratishka Taxi Inc., Pumo Taxi Inc., Piguet Taxi Inc., Kormilitsa Taxi Inc., Prada

Taxi, Inc., Student Taxi Inc., Hublot Taxi Inc., Torpedo Taxi Inc., Black Label Taxi LLC, Praga

Taxi Inc., Two Hump Taxi LLC, Kroshka Taxi Inc., Lacoste Taxi Inc., Sangria Taxi LLC, Volba

Taxi Inc. (collectively, "Plaintiffs") by their attorneys, Herrick, Feinstein LLP, as and for their

complaint against Defendants General Motors Corp., ElDorado National, Inc., and Arcola Sales

& Service Corp. (collectively, "Defendants") hereby allege as follows:

### Nature of the Action

1.     Plaintiffs seek to recover the damages they have suffered as a result of

Defendants', General Motors Corp. ("General Motors"), ElDorado National Inc. ("ElDorado"),

and Arcola Sales & Service Corp. ("Arcola"), wanton and gross disregard for customer safety.

Plaintiffs have suffered extensive losses because of Defendants' negligence in improperly

manufacturing, retrofitting, and selling defective Chevrolet Uplanders (the "Vehicles" or the

"Taxis"), which, as Defendants knew, were specifically purchased for use as wheelchair-

accessible taxicabs in New York City.

2.     Plaintiffs have also been significantly damaged by Defendants' express

and implied warranty breaches. Defendant Arcola has breached the vehicles' sales contracts with

Plaintiffs and have violated Article 2 of the Uniform Commercial Code ("UCC"). All

Defendants' breaches have gravely damaged Plaintiffs' business. Plaintiffs are bogged down

with the frustrating task of managing a fleet of dysfunctional taxicabs, relentlessly repairing the

failing vehicles, finding new taxicab drivers to replace drivers who find it too risky to drive the

vehicles, pacifying taxicab drivers who are losing money because the taxis are constantly off the

road being repaired, addressing the citizens of New York who expected safe and functioning

wheelchair-accessible taxicabs, loss of driver shifts, loss of reputation in the community, towing

2

costs, the cost of alternate travel for stranded passengers, damages for lost opportunity of advertising on the tops of the vehicles, and the list of harms goes on and on.

3.     Plaintiffs seek this court's protection from any further wrongdoing by all Defendants, and for money damages to compensate for Defendants' blatant contract and warranty breaches.

## Jurisdiction and Venue

4.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332, because there is complete diversity between the parties, and the amount in controversy exceeds $75,000.00.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, because Plaintiffs' principal place of business is located in this district.

## Parties

6.     Evgeny Freidman resides in, is a citizen of, and is domiciled in and State of New York.

7.     Vladimir Basin resides in, is a citizen of, and is domiciled in and State of New York.

8.     Mamed Dzhaniyev resides in, is a citizen of, and is domiciled in and State of New York.

9.     Plaintiffs Freidman, Basin and Dzhaniyev are the only owners and members of the corporations and LLCs named as Plaintiffs in this case. The LLCs and corporations named as plaintiffs in this case are entities set up as the owners of New York City taxi medallions.

10.     Victory Taxi Garage, Inc., is a New York corporation with offices at 102 Foster Avenue, Brooklyn, NY 11230 with its principal place of business in the State of New York.

11.    Tunnel Taxi Management, LLC, is a limited liability company organized under the laws of the State of New York with offices at 44-07 Vernon Blvd., Long Island City, NY 11101 with its principal place of business in the State of New York.

12.    Downtown Taxi Management, LLC, is a limited liability company organized under the laws of the State of New York with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

13.    Bazar Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

14.    Patron Taxi LLC, is a limited liability company organized under the laws of the State of New York with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

15.    Grappa Taxi LLC, is a limited liability company organized under the laws of the State of New York with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

16.    Cognac Taxi LLC, is a limited liability company organized under the laws of the State of New York with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

17.    Calvados Taxi LLC, is a limited liability company organized under the laws of the State of New York with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

18.    Tequila Taxi LLC, is a limited liability company organized under the laws of the State of New York with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

19.     Jack Daniels Taxi LLC, is a limited liability company organized under the laws of the State of New York with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

20.     Murzik Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

21.     Malinka Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

22.     Yagodka Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

23.     Persik Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

24.     Bratishka Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

25.     Pumo Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

26.     Piguet Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

27.     Kormilitsa Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

28.     Prada Taxi, Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

29.     Student Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

30.     Hublot Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

31.     Torpedo Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

32.     Black Label Taxi LLC, is a limited liability company organized under the laws of the State of New York with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

33.     Praga Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

34.     Two Hump Taxi LLC, is a limited liability company organized under the laws of the State of New York with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

35.     Kroshka Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

36.     Lacoste Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

37.     Sangria Taxi LLC, is a limited liability company organized under the laws of the State of New York with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

38.     Volba Taxi Inc., is a New York corporation with offices at 330 Butler Street, Brooklyn, NY 11231 with its principal place of business in the State of New York.

39.    Upon information and belief, General Motors is a Delaware corporation whose principal place of business is located at 300 Renaissance Center, Detroit, Michigan 48265. General Motors is in the business of manufacturing and selling automotive vehicles.

40.    Upon information and belief, ElDorado National, Inc., a subsidiary of Thor Industries, is a Kansas corporation, whose principal place of business is located at 1655 Wall St., Salina, Kansas 67401. Upon information and belief, Defendant ElDorado is in the business of manufacturing and retrofitting automotive vehicles and is considered a "Second Stage Manufacturer."

41.    Arcola Sales & Service Corp. is a corporation whose principal place of business is located at 51 Kero Road, Carlstadt, New Jersey 07072. Upon information and belief, Defendant Arcola is in the business of selling automotive vehicles.

## Background

42.    Plaintiffs aver that as a result of the faulty design of the vehicles and Defendants' failed repair attempts, the vehicles Plaintiffs have purchased from Defendants cannot be utilized for reliable, safe, and functioning taxicabs as intended by Plaintiffs at the time of acquisition, and further, that Defendants' warranties have failed their essential purpose.

## Wheelchair-Accessible Taxicabs and Medallions

43.    The New York City taxicab industry is a private industry closely regulated by the New York City Taxi & Limousine Commission (the "TLC"). The TLC was created in 1971 by New York City Council legislation (Local Law 12) to regulate and improve taxi and livery service in New York City and to establish overall transportation policy governing these services. Upon information and belief, there are only 13,148 medallion taxicabs currently authorized to accept hails from passengers within the five boroughs of the New York City.

7

44.     The TLC is responsible for, *inter alia*, licensing and regulating New York City's medallion (yellow) taxicabs, for-hire vehicles (community-based liveries and black cars), commuter vans, paratransit vehicles (ambulettes), and certain luxury limousines.

45.     A "taxicab medallion" is a metallic symbol affixed to the hood of a New York City taxicab that represents a license from the City, authorizing the operation of a taxicab within the City of New York. The number of taxicab medallions in New York City is limited by law. Licensed taxicabs are the only motor vehicles permitted to accept passengers by street hail on the streets of New York City.

46.     Not only is a medallion a license to operate a taxicab and generate income from such operations, but it is also a license to own and operate a small business, to use as security for loans, and to lease the license to other operators for a fee limited by law. Taxicab licenses may also be transferred to another qualified buyer subject to certain restrictions.

47.     An "Accessible Medallion" is a restricted medallion and is defined as a "a taxicab license valid for use only with a vehicle accessible to a passenger using a wheelchair." R.C.N.Y. § 13-01(a). Presently, only 144 out of the 13,148 taxicab medallions in New York City are Accessible Medallions.

48.     On or about October 15, 2004, the TLC, auctioned off Accessible Medallions. Plaintiffs bid on and won eleven (11) of these medallions.

49.     On or about June 16, 2006, the TLC auctioned off more Accessible Medallions. Plaintiffs bid on and won fifty four (54) of these medallions.

50.     The Accessible Medallions purchased by Plaintiffs gave Plaintiffs the right to operate wheelchair-accessible taxicabs in New York City that are licensed to pick up passengers from the street.

51.    Upon information and belief, until in or around late 2006 the TLC had approved only one brand of vehicle for wheelchair-accessible purposes -- the Chevrolet Uplander. Arcola was authorized to advertise and sell Uplanders that General Motors and ElDorado manufactured as accessible to wheelchairs.

52.    Upon information and belief, all Defendants had presented this vehicle to the TLC for the TLC's approval for use of the retrofitted Uplander as a wheelchair-accessible taxi. The TLC approved the vehicle since the vehicle's specifications met the appropriate TLC requirements and ADA standards, then listed Defendant Arcola as an authorized dealer of these approved vehicles. Defendants advertised to the public that ElDorado's retrofitted vehicles were suitable for use as New York City taxicabs.


**The Retrofitting**

53.    Upon information and belief, General Motors, ElDorado and Arcola were all working together to get Plaintiffs with the vehicles sold to Plaintiffs. General Motors provided ElDorado with the Chevrolet Uplander frame. Based on General Motors' design, ElDorado then retrofitted the vehicles for wheelchair-accessibility at its factory in Kansas. Once the vehicles were retrofitted, the vehicles were delivered to Arcola for final delivery to the customers.

54.    Upon information and belief, as directed by General Motors, ElDorado made substantial changes to the vehicle which involved extensive cutting to the body structure, including lengthening and lowering of vehicle components to accommodate wheelchair riding occupants entry into the vehicle.

55.     Upon information and belief, General Motors also provided "original equipment manufacturer" (OEM) support as well as assistance to ElDorado both in producing and repairing ElDorado's failed retrofitting.

56.     Defendants advertised and warranted to Plaintiffs that the Uplanders complied with the American Disabilities Act (ADA), the Administrative Code of the City of New York, and the TLC wheelchair-accessibility requirements.

57.     In or around late 2006, Plaintiffs ordered fifty-two (52) retrofitted Chevrolet Uplanders from Arcola, ElDorado and General Motors. Plaintiffs understood from the advertisements and from conversations with Defendant that the vehicles were to be retrofitted by ElDorado and General Motors pursuant to the TLC specifications for wheelchair-accessible taxicabs, just as the parties advertised and warranted to Plaintiffs.

58.     Plaintiffs signed "Orders" for the vehicles with Arcola, since Arcola was permitted to sell the retrofit vehicles. The Orders specified, as Defendants agreed to do during emails and other communications, that as part of the retrofitting process, Defendants would make the vehicles functional and prepared to serve as NYC taxis. Plaintiffs paid additional costs so that the vehicles would contain taxicab walls, taxicab swing-in ramps, and the classic yellow paint that is found on New York City taxicabs.

59.     Upon information and belief, the delivery of the vehicles was delayed by problems with the manufacture and retrofitting process. Throughout the delay, representatives from ElDorado and General Motors were communicating with Plaintiffs regarding the delay.

60.     Once the vehicles started to fail, Plaintiffs were contacting representatives of all three Defendants regarding the failures.

61.    Throughout the period that the vehicles were experiencing complications, all of the Defendants knew about the vehicles' failures and were involved in the failed repair and re-engineering process. Upon information and belief, in or around the end of 2007, General Motors and ElDorado designed a global repair to fix the retrofitted Uplanders' many problems. However, the design "fix" was too late to overcome the extensive damage that had already occurred because of Defendants' negligent manufacture and design.

62.    Upon information and belief, General Motors has discontinued the particular design of the Chevrolet Uplander that Plaintiffs' purchased for use as taxicabs.

**The Failed Repairs**

63.    Despite Defendants' assurances, advertisements, brochures, certificates and express and implied warranties, Plaintiffs received defective vehicles that were constantly failing.

64.    Upon information and belief, ElDorado's retrofitting design for the purpose of wheelchair-accessibility severely compromised critical components of the Uplander, such as the rear suspension, the transmission and the sliding door system. The harm to each of these further negatively impacted other of the vehicles' parts.

65.    Upon information and belief, in designing and manufacturing the vehicles Defendants did not sufficiently test and/or properly engineer the vehicles or Defendants would have detected these substantial flaws.

66.    As a result of Defendants' negligent engineering and manufacture, the following common problems occurred: (a) the axles separated from the chassis, (b) doors fell from the hinges, at times while the vehicle was in motion, (c) faulty engine mounts came loose,

(d) problems with defective trailing arm bushings occurred, (e) transmission failures occurred, and (f) problems occurred with the vehicles' on-board diagnostic technology ("OBD").

67.     Each of the vehicles has required several repairs, and since early 2007, Plaintiffs have had to employ a tow truck more than 300 times to transport broken-down wheelchair-accessible taxis to repair shops.

68.     Because each of the vehicles required extensive repairs, each of the vehicles was removed more than one time from the road for vehicle repairs, as well as to avert further breakdowns.

69.     As a result of the repeated repairs and Plaintiffs' inability to use the vehicles, Plaintiffs have lost in total more than 7,820 shifts, at a loss of revenue of more than $2,000,000.

70.     As a further result of the numerous safety problems with the taxis, taxi drivers have refused to drive these vehicles and these drivers have sought to drive taxicabs belonging to other owners.

71.     Although Plaintiffs immediately notified all Defendants of the vehicles' problems, Plaintiffs had to make multiple phone calls and send the three Defendants numerous letters and e-mails before any Defendants moved forward toward fixing the defective retrofitting.

72.     Though Defendants' technicians eventually performed makeshift repairs on the vehicles, the vehicles were so critically defective that even Defendants could not maintain sufficient manpower to address the defects.

73.     Upon information and belief, Defendants' technicians would repair the immediate failures, but this did could not stop further damage from occurring. The technicians' repairs caused further damage. Upon information and belief, the technicians did not directly

advise Plaintiffs that the suspension, as altered by Defendants' design, was causing damage to the vehicle.

74.    Upon recognizing that Defendants had made critical errors in the manufacture, design, and sale of the retrofitted vehicle, Plaintiffs demanded return of their money and demanded that Defendants remove all of the defective vehicles from Plaintiff and that Defendants refund him for the cost of the faulty vehicles. Defendants refused all of Plaintiffs' demands.

75.    Plaintiffs have deposited the vehicles with Defendant Arcola.

### FIRST CAUSE OF ACTION
### (Breach of Contract Against Defendant Arcola)

76.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "71" above.

77.    The Bills of Sales between Plaintiffs and Arcola for the sales of the Chevrolet Uplanders were valid and enforceable.

78.    The sales agreements reflected the bargain between and amongst Plaintiffs and Arcola, and incorporated promises made by Defendants General Motors and ElDorado, for the purchase of vehicles to serve as taxicabs with specific components for wheelchair-accessibility.

79.    At all times relevant herein, Plaintiffs have fully performed their obligations under the foregoing agreements.

80.    The Bills of Sale signed by Arcola provide that "Seller will defend the Buyer against any and all lawful claims and demands whatsoever in relation to this bill of sale."

81. Pursuant to the sales agreements, Defendant Arcola agreed to provide Plaintiffs with new Chevrolet Uplanders retrofitted in a condition fit for use as wheelchair-accessible taxicabs.

82. As received by Plaintiffs, the vehicles were defective, and were not capable of meeting the standards of quality and performance for a vehicle of its kind.

83. Plaintiffs, on numerous occasions, gave Defendant Arcola timely notice of the vehicles' defects; nevertheless, the repairs were never able to cure the fundamental defects of the basic engineering flaws, as designed and manufactured by Defendants ElDorado and General Motors.

84. Plaintiffs have not been able to, and will never be able to, reap the benefit of their bargain.

85. Defendant Arcola has breached the sales agreements with Plaintiffs.

86. By reason of the foregoing, Plaintiffs have suffered damages, including but no less than the amount paid for the vehicles, $3,000,000, and consequential and incidental damages, in an amount to be determined at trial but believed to be no less than $3,000,000.

## SECOND CAUSE OF ACTION
### (Breach of Warranty)

87. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "81" above.

88. The vehicles constitute "goods" within the meaning of Article 2 of the Uniform Commercial Code as adopted in New York. Defendants, merchants of vehicles, sold the vehicles to Plaintiffs.

14

89.     Each Defendant affirmatively represented through conversations, brochures, advertisements and in other forms, to Plaintiffs that the vehicles would properly operate. These representations constituted express warranties within the meaning of the UCC.

90.     At the time that Defendants made these representations, Defendants knew or should have known that Plaintiffs would rely on their representations in deciding whether to purchase the vehicles.

91.     Plaintiffs did rely on Defendants' representations that the vehicles had been correctly designed, manufactured and retrofitted for customers in wheelchairs and would be able to function properly. If Defendants had truthfully represented the unfit nature of the vehicles, clearly, Plaintiffs would not have purchased the vehicles.

92.     Defendants' negligent design and manufacture compromised critical components of the Chevrolet Uplanders, and the resulting vehicles were not in the condition fit for use as wheelchair-accessible taxicabs.

93.     By reason of the foregoing, Defendants have breached their express warranties to Plaintiffs.

94.     As a direct and proximate cause of the breach of express warranty, Plaintiffs have been damaged in an amount to be determined at trial, but believed to be no less than $3,000,000.

## THIRD CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability)

95.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "95" above.

96.     The vehicles constitute "goods" within the meaning of Article 2 of the Uniform Commercial Code. Defendants are merchants of vehicles purchased by Plaintiffs.

97.    Defendants impliedly warranted the vehicles to be of merchantable quality.

98.    Defendants all knew or should have known that the vehicles were ordered by Plaintiffs for use as wheelchair-accessible taxicabs.

99.    Defendants breached the implied warranty of merchantability by providing vehicles that could not be used by Plaintiffs because the vehicles malfunctioned and no repair could correct the vehicles.

100.    As a direct and proximate result of Defendants' breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be determined at trial, but believed to be no less than $3,000,000.

**FOURTH CAUSE OF ACTION**
**(Breach of Implied Warranty for a Particular Purpose)**

101.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "89" above.

102.    The vehicles constitute "goods" within the meaning of Article 2 of the Uniform Commercial Code. Defendants are merchants of vehicles purchased by Plaintiffs.

103.    At the time that Defendants sold the vehicles to Plaintiffs, Defendants knew or had reason to know that Plaintiffs intended to use the vehicles as taxicabs. Defendants committed to design, manufacture and retrofit the vehicles, to paint the vehicles yellow, and to include classic elements of New York city taxis such as marking the vehicles with the New York City taxi logo. These vehicles were specially retrofitted to meet the standards of the NYC taxi industry, and to comply with TLC regulations.

104.    The sales agreements reflected the bargain between and amongst the parties for vehicles to serve as taxicabs with wheelchair-accessibility in New York City.

16

Defendants provided an implied warranty of fitness for the particular purpose as functional New York City wheelchair-accessible taxicabs.

105.    Defendants have breached the warranty of fitness for a particular purpose because the vehicles they sold to Plaintiffs were defective, were not fit for use as wheelchair-accessible taxicabs, and have caused Plaintiffs tremendous damage.

106.    As a direct and proximate result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiffs have been damaged in an amount to be determined at trial, but believed to be no less than $3,000,000.

WHEREFORE, Plaintiffs Evgeny A. Freidman, Vladimir Basin, Mamed Dzhaniyev, Victory Taxi Garage, Inc., Tunnel Taxi Management, LLC, Downtown Taxi Management, LLC, Bazar Taxi Inc., Patron Taxi LLC, Grappa Taxi LLC, Cognac Taxi LLC, Calvados Taxi LLC, Tequila Taxi LLC, Jack Daniels Taxi LLC, Murzik Taxi Inc., Malinka Taxi Inc., Yagodka Taxi Inc., Persik Taxi Inc., Bratishka Taxi Inc., Pumo Taxi Inc., Piguet Taxi Inc., Kormilitsa Taxi Inc., Prada Taxi, Inc., Student Taxi Inc., Hublot Taxi Inc., Torpedo Taxi Inc., Black Label Taxi LLC, Praga Taxi Inc., Two Hump Taxi LLC, Kroshka Taxi Inc., Lacoste Taxi Inc., Sangria Taxi LLC, Volba Taxi Inc., demand the entry of judgment against Defendants General Motors Corp., ElDorado National Inc., and Arcola Sales & Service Corp. awarding them as follows:

A. On the first cause of action, damages, including consequential and incidental damages, as a result of Defendant Arcola's breach of contract in an amount to be determined at trial, but no less than $3,000,000, and;

B.  On the second cause of action, damages, including consequential and incidental damages, as a result of breaching the express warranty in an amount to be determined at trial, but no less than $3,000,000, and;

C.  On the third cause of action, damages, including consequential and incidental damages, as a result of breaching the implied warranty of merchantability in an amount to be determined at trial, but no less than $3,000,000, and;

D.  On the fourth cause of action, damages, including consequential and incidental damages, as a result of breaching the implied warranty of fitness for a particular purpose in an amount to be determined at trial, but no less than $3,000,000, and;

E.  For such other and further relief as the Court deems just and proper.


Dated: New York, New York
       June 9, 2008


HERRICK, FEINSTEIN LLP

By:_____
       William Fried
       Inbal Baum
       Attorneys for Plaintiffs
       2 Park Avenue
       New York, New York 10016
       (212) 592-1400
       wfried@herrick.com
       ibaum@herrick.com

## CERTIFICATE OF SERVICE

Michael E. Friedman, an attorney duly admitted to practice before the United States District Court for the Southern District of New York, hereby certifies that the foregoing amended complaint was served by first-class U.S. mail this 9th day of June, 2008 upon the following:

See Attached

Dated: June 9, 2008
      New York, New York

_____
Michael E. Friedman

ATTORNEY LIST

Attorney for Arcola
PAUL H. LEVINSON, ESQ.
McLaughlin & Stern, LLP
260 Madison Avenue, 18th Floor
New York, New York 10016
Tel.: (212) 448-1100 (ext. 190)
Direct: (212) 448-6279
Fax: (212) 448-0066 (Alt.: (212) 448-6273)
Cell:  (917) 902-9429
Email: plevinson@mclaughlinstern.com
Web Site: www.mclaughlinstern.com


Co-Counsel Attorneys for Arcola
Christopher E. Hartmann, Esq.
Wacks & Hartmann, LLC
Attorneys at Law
55 Madison Avenue ~ Suite 320A
Morristown, New Jersey 07960
Tel.: 973.644.0770
Fax: 973.644.2224
E-mail: *hartmann.christopher@yahoo.com*

Attorney for GM
Timothy J. McHugh
420 Lexington Ave.
Graybar Building
Suite 2900
New York, NY 10170
Telephone No (212) 319-6898
Fax No (212) 319- 6932
E-mail: tmchugh@lavin-law.com

Of-Counsel for GM
Joseph E. O'Neil
John J. O'Donnell
190 North Independence Mall West
6th & Race Streets, Suite 500
Philadelphia, PA 19106
Telephone No. (215) 627-0303
Fax No. (215) 627-2551
E-mail: joneil@lavin-law.com
E-mail: jodonnell@lavin-law.com

<u>Attorneys for ElDorado</u>
Robert H. Pees
Ariane Austin Qureshi
Jamison A. Diehl
Akin Gump Strauss Hauer & Feld LLP
590 Madison Ave
New York, New York 10022
(212) 872-1000
(212) 872-1002