IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x
Evgeny A. Freidman, Vladimir Basin,
Mamed Dzhaniyev, Victory Taxi Garage
Inc., Tunnel Taxi Management, LLC,
Downtown Taxi Management, LLC, Bazar
Taxi Inc. Patron Taxi LLC, Grappa Taxi
LLC, Cognac Taxi LLC, Calvados Taxi          **Civil Action No. 1:08-CV-02458 (SAS)**
LLC, Tequila Taxi LLC, Jack Daniels
Taxi LLC, Murzik Taxi Inc., Malinka
Taxi Inc., Yagodka Taxi Inc., Persik Taxi
Inc., Bratishka Taxi Inc., Pumo Taxi Inc.,
Piguet Taxi Inc., Kormilitsa Taxi Inc.,
Prada Taxi, Inc., Student Taxi, Inc., Hublot
Taxi Inc., Torpedo Taxi Inc., Black Label
Taxi LLC, Praga Taxi Inc., Two Hump Taxi
LLC, Kroshka Taxi Inc., Lacoste Taxi Inc.,
Sangria Taxi LLC, Volba Taxi Inc.,

      Plaintiffs,

   v.

General Motors Corp., ElDorado
National, Inc., and Arcola Sales &
Service Corp.,

      Defendants.
----------------------------------------------------------x

**DEFENDANTS GENERAL MOTORS CORPORATION'S AND
ELDORADO NATIONAL, INC.'S REPLY MEMORANDUM OF LAW
<u>IN FURTHER SUPPORT OF JOINT MOTION TO DISMISS AND STRIKE</u>**

| | |
|---|---|
| Robert H. Pees | Timothy J. McHugh |
| Jamison A. Diehl | Lavin, O'Neil, Ricci, Cedrone & DiSipio |
| AKIN GUMP STRAUSS HAUER & FELD LLP | 420 Lexington Avenue |
| One Bryant Park | Graybar Building |
| New York, New York 10036 | Suite 2900 |
| Telephone: (212) 872-8054 | New York, New York 10170 |
| Facsimile: (212) 872-1002 | Telephone: (212) 319-6898 |
| jdiehl@akingump.com | Facsimile: (212) 319-6932 |
| | tmchugh@lavin-law.com |
| *Attorneys for Defendant ElDorado National, Inc.* | *Attorneys for Defendant General Motors Corporation* |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I.      Plaintiffs' Claim For Breach Of Express Warranty Must Be Dismissed ........................... 2

        A.      Plaintiffs Fail To Establish The Existence Of Any Express Warranties Other Than The Manufacturers' Written Limited Warranties .............................. 3

        B.      Plaintiffs Abandon Their Claims For Incidental, Consequential And Punitive Damages And Also Demonstrate That Dismissal Is Warranted On The Merits ............................................................................................................ 5

II.     Plaintiffs' Claims For Breach Of Implied Warranties Are Precluded As A Matter Of Law ................................................................................................................................. 7

III.    Plaintiffs' Fraud Claims Fail As A Matter Of Law ............................................................ 8

CONCLUSION ......................................................................................................................... 10

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524 (S.D.N.Y. 2004) ................................................. 5

*Abraham v. Volkswagon of America, Inc.*, 795 F.2d 238 (2d Cir. 1986) ................................. 1, 4-5

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ........................................................... 3

*DCML, LLC v. Danka Bus. Sys. PLC*, No. 08 Civ. 5829, 2008 U.S. Dist. LEXIS 97210
    (S.D.N.Y. Nov. 26, 2008) ........................................................................................................ 3

*Henry v. Rehab. Plus., Inc.*, 404 F. Supp. 2d 435 (E.D.N.Y. 2005) ......................................... 7

*In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*,
    No. 06 Civ. 643(GEL), 2007 WL 2694469 (S.D.N.Y. Sept. 13, 2007) ................................. 5

*Langenberg v. Sofair*, No. 03 Civ. 8339 (KMK),
    2006 WL 2628348 (S.D.N.Y. Sept. 11, 2006) ...................................................................... 9

*Lipton v. County of Orange, N.Y.*, 315 F. Supp. 2d 434 (S.D.N.Y. 2004) ............................... 5

*McNally Wellman Co. v. New York State Elec. & Gas Corp.*, 63 F.3d 1188 (2d Cir. 1995) ........... 6

## STATE CASES

*Frank's Maintenance & Eng'g, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980 (1980) ............. 7-8

*Miller v. General Motors Corp.*, 471 N.Y.S.2d 280 (1st Dep't 1984) ..................................... 8

*Randy Knitwear v. American Cyanamid Co.*, 11 N.Y.2d 5, 226 N.Y.S.2d 363 (1962) ............ 7

## STATUTES AND RULES

Fed. R. Civ. P. 9(b) ................................................................................................................. 2, 10

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 2

Fed. R. Civ. P. 12(f) ................................................................................................................ 2, 5

N.Y. U.C.C. § 2-719(3) ........................................................................................................... 6, 7

## PRELIMINARY STATEMENT

In opposing Defendant General Motors' and ElDorado's ("Defendants") motion to dismiss, Plaintiffs never once mention the express written limited warranties issued by the Defendants, just as they failed to do in their Complaint. Plaintiffs' silence concerning the manufacturers' written warranties is coupled with allegations of other purported express warranties that Plaintiffs contend were created, and they attach the documents which they believe evidence these warranties as exhibits to Mr. Freidman's affidavit. Plaintiffs argue that the representations contained in these documents constituted express warranties that the vehicles were fit for use as wheelchair-accessible vehicles.

What is remarkable, however, is that, while avoiding any mention of the manufacturers' written warranties, Plaintiffs attempt to rely on documents which they themselves created, or which they received from individuals and entities other than Defendants, for the express warranties they claim were breached. Even a cursory examination of these documents reveals that they contain no promises or affirmations and cannot constitute express warranties.

According to Plaintiffs, these documents establish their expectations for the vehicles and that Defendants were aware of such expectations.[1] Opp. Br. at 8 ("Plaintiffs' expectations, then, did not come from thin air."). However, by thus relying on documents which clearly do not constitute express warranties, Plaintiffs confirm that they have merely conflated notions of express and implied warranty and, by so doing, have fallen prey to the exact error which the Second Circuit decried in *Abraham v. Volkswagon of America, Inc.*, 795 F.2d 238, 250 (2d Cir. 1986). Indeed, it is simply not the law that a consumer can unilaterally create *express* warranties

---

[1] Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss hereinafter is referred to as "Opposition Brief" and cited as "Opp. Br." Defendants' Memorandum of Law in Support of Joint Motion to Dismiss and Strike hereinafter is referred to as "Opening Brief" and cited as "Opening Br."

by giving expression to their particular expectations for a product, and Plaintiffs have cited no case to support their incipient theory.

Plaintiffs' aversion to the manufacturers' written limited warranties is such that, in their Opposition Brief, Plaintiffs make *no response at all* to Defendants' arguments that the plain term of each written warranty mandates dismissal of Plaintiffs' demand for incidental and consequential damages. *See* Opening Brief at 10-13. In addition, Plaintiffs make no effort to oppose Defendants' Rule 12(f) motion to strike their punitive damage demand, thus, also abandoning this aspect of their damages claim.

With respect to Plaintiffs' claims for breach of implied warranty of merchantability and fitness for a particular purpose, Plaintiffs fail to address a single one of the phalanx of cases cited in Defendants' moving brief, which overwhelmingly establish that, under New York law, a party cannot be held liable for breach of implied warranties where, as here, privity of contract does not exist and only economic damages are alleged. Having amended their Complaint to drop their breach of contract claim against General Motors and ElDorado – because these Defendants did not contract with Plaintiffs – and alleging only economic loss and no personal injuries, Plaintiffs have not pled the elements necessary to sustain an implied warranty claim under New York law.

Finally, Plaintiffs' belated attempt to supplement their fraud claim, originally pled in a single paragraph of information-and-belief allegations, conclusively demonstrates that Plaintiffs have not pled the basic elements of their putative claim and fall woefully short of satisfying Rule 9(b).

## ARGUMENT

I.  **Plaintiffs' Claim For Breach Of Express Warranty Must Be Dismissed**

As an initial matter, when Plaintiffs contend that they do not have to plead facts in order to survive a motion to dismiss under Rule 12(b)(6), Plaintiffs have the standard wrong. *See* Opp.

2

Br. at 5-6 (citing only pre-*Twombly* case law). Under *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007), a complaint must amplify a claim with sufficient factual allegations to render the claim plausible. *See DCML, LLC v. Danka Bus. Sys. PLC,* No. 08 Civ. 5829, 2008 U.S. Dist. LEXIS 97210 at *4 (S.D.N.Y. Nov. 26, 2008) (Scheindlin, J.). Plaintiffs' Complaint falls well short of meeting this standard.

### A. Plaintiffs Fail To Establish The Existence Of Any Express Warranties Other Than The Manufacturers' Written Limited Warranties

With respect to their breach of express warranty claim, Plaintiffs seek to "remove all doubt" concerning the viability of this claim by attaching "evidence of Defendants' express promises, including brochures and emails in which Defendants clearly represented the suitability of the Uplander vehicle for the advertised purpose as a wheelchair-accessible taxi." Opp. Br. at 9-10. But none of Plaintiffs' documents come even close to establishing an express warranty, and make clear that Plaintiffs have badly confused concepts of express and implied warranty.

First, with respect to the brochure, Mr. Freidman admits that Plaintiffs were provided this brochure "by Arcola Sales & Service Corp." Freidman Aff. ¶ 4. This brochure, which was created by Arcola, could not constitute an express warranty by either General Motors or ElDorado. *See* Freidman Aff., Ex. A. In any case, the brochure contains no promises or affirmations. *See id.* Further, while Plaintiffs contend this brochure influenced their decision to bid at auction on the 54 medallions, the auction already had taken place, as the brochure itself indicates: "The auction of the 54 accessible medallions *was held* on June 16." *Id.*

Plaintiffs' second document starts with an email from Mr. Freidman to General Motors' account executive Chuck Compagnoni in which Mr. Freidman requests help in expediting delivery of chassis. Freidman Aff., Ex. B. Mr. Compagnoni responds, "Gene, Thanks for the reply. Have Andy [at Arcola] get me the order #'s of your units and I will expedite." No express

3

warranty is created by dint of this email as it contains no promise concerning the vehicles (it concerns expediting of delivery of chassis). Plaintiffs' third document is an email from Denny Foerschler at ElDorado to Peter Schenkman at the NYC Taxi and Limousine Commission. Freidman Aff., Ex. C. It is *not* an email sent by Defendants to Plaintiffs and contains no promises or affirmations, in any case. Plaintiffs' fourth document, once again, is an email *from* Plaintiff Freidman to Chuck Compagnoni at General Motors, informing him that he had won all 54 medallions at auction, had ordered 54 vehicles, and indicates his desire to be introduced to a local chevy dealer "where i could get fleet and prefered [sic] status with warrenty [sic], parts and service." Freidman Aff., Ex. D. Plaintiffs believe that because Mr. Freidman "made it clear to General Motors that keeping the Uplanders on the road was essential to [his] business," that an express warranty was thereby created. Freidman Aff. at ¶ 20. But express warranties do not spring from a consumer simply informing a manufacturer of the consumer's particular needs.

Thus, in seeking to "remove any doubt" concerning the viability of their express warranty claim, Plaintiffs demonstrate that the alleged express warranties have indeed been conjured, to use Plaintiffs' own expression, "out of thin air." Plaintiffs have merely assembled documents to establish their own expectations that the vehicles were fit for use as wheelchair accessible taxis. But, in this manner, Plaintiffs have confused concepts of express and implied warranty, and confirm their error by seeking to ground their express warranty claim on the basis of such documents. In rejecting a holding from another case, the Second Circuit has addressed the very confusion to which Plaintiffs have fallen prey:

> the court confused concepts of implied and express warranty. The decision thus speaks of General Motors breaching its warranty that the cars would be "merchantable and fit for the purpose of providing the ordinary transportation . . . *expected of them.* These terms and concepts are usually associated with implied warranty . . . as opposed to the type of limited express warranty at issue . . . .

4

*Abraham*, 795 F.2d 238, 250 (emphasis added). Instead of addressing this case, or attempting to distinguish it, Plaintiffs demonstrate that they have committed the very mistake which the *Abraham* Court was determined to avoid. Thus, failing to identify any express warranty that was breached, and relying only on allegations of implied warranty breaches, Plaintiffs' express warranty claim must be dismissed as a matter of law.

### B. Plaintiffs Abandon Their Claims For Incidental, Consequential And Punitive Damages And Also Demonstrate That Dismissal Is Warranted On The Merits

Plaintiffs should not be permitted to escape the actual terms of General Motors' and ElDorado's respective written limited warranties by taking refuge in implied warranty concepts and vague expressions of their own expectations for the vehicles. As shown in Defendants' Opening Brief, the plain terms of each manufacturers' actual written warranty mandates dismissal of Plaintiffs' claims for incidental and consequential damages against General Motors and ElDorado.

Plaintiffs, however, offer no response to Defendants' arguments for dismissal of their damages claims, and have not opposed Defendants' Rule 12(f) motion to strike the demand for punitive damages. The Court, therefore, should deem Plaintiffs' demands for incidental, consequential and punitive damages abandoned. *See, e.g., Lipton v. County of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed" (citation omitted)); *Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 530 (S.D.N.Y. 2007) (citing, *inter alia, In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*, No. 06 Civ. 643(GEL), 2007 WL 2694469, at *6 (S.D.N.Y. Sept.13, 2007)).

While abandoning their damages claims by failing to respond to Defendants' arguments, Plaintiffs nevertheless manage to lend further support to dismissal on the merits, as well. Under

5

N.Y. U.C.C. § 2-719(3) "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." *See* Moving Br. at 10-13. "The determination of conscionability is a question of law." *McNally Wellman Co. v. New York State Elec. & Gas Corp.*, 63 F.3d 1188, 1198 (2d Cir. 1995). Under N.Y. U.C.C. 2-719(3), a contractual exclusion of consequential damages is *per se* valid, unless shown to be unconscionable, and here there is simply no basis upon which to rebut the presumption of conscionability.

Plaintiffs confirm that *none* of the factors that courts have considered in determining unconscionability, *e.g.*, disparity of bargaining power or lack of sophistication of one of the parties, is present in this case. Mr. Freidman admits he had a monopoly on the market for medallion taxis and could have elected to purchase vehicles manufactured by Braun instead of Defendants: "since my partners and I had won the auction of all the accessible medallions available, if we chose to buy from Braun, *ElDorado and General Motors would have had no market in New York City for the sale of their Uplander taxi*." Freidman Aff. at ¶ 29 (emphasis added). Thus, any disparity of bargaining power clearly was enjoyed by Plaintiffs.

As for sophistication, Mr. Freidman's affidavit discusses at length his long experience in the taxi industry, his intimate involvement in the process of inspecting and testing the Uplanders, his unrestrained criticism of the vehicles prior to purchase, and his considerable investment in the medallions. Moreover, Plaintiffs purchased the vehicles form Arcola "AS IS," aware, as each of the Sales Orders with Arcola disclosed, that "the only warranties are those offered by the Manufacturers." Diehl Decl., Exh. A. And the terms of the manufacturers' respective written limited warranties are crystal clear. They are limited to repair or replacement of parts, and expressly exclude incidental and consequential damages. *See id.*, Exhs. B, C.

6

Accordingly, in addition to abandoning their consequential, incidental and punitive damages claims, the liability exclusions in the limited warranties provided by General Motors and ElDorado should be enforced on the merits under Section 2-719(3).

## II. Plaintiffs' Claims For Breach Of Implied Warranties Are Precluded As A Matter Of Law

Plaintiffs seek recovery only for economic loss, not personal injury. Accordingly, under well-settled New York law, they are required to demonstrate privity of contract in order to maintain a cause of action for breach of implied warranty. Plaintiffs, of course, amended their pleading to drop their breach of contract causes of action against General Motors and ElDorado, and do not now contend that either Defendant entered into a contract with Plaintiffs. In their opposition papers, rather than address a single one of the cited cases, Plaintiffs offer the novel theory that they should be able to proceed on an implied warranty theory against the manufacturers because they were in direct contact with the manufacturers. Plaintiffs cite no case to support this theory and, in fact, the case law is to the contrary. *See* Moving Br. at 14-16.

For their final argument, Plaintiffs state to this Court that "an 'out-of-privity' buyer suffering economic loss may still prevail upon a showing that the manufacturer was *aware* of the parties particular purpose to be made of the product, and proceeded nevertheless to provide a product unsuited to that use." Opp. Br. at 12 (emphasis in original). Plaintiffs cite three cases, and none help them. *Randy Knitwear v. American Cyanamid Co.*, 11 N.Y. 2d 5, 226 N.Y.S. 2d 363, 181 N.E. 2d 399 (1962) did not even address implied warranties. It was an express warranty case decided on the basis of common law principles prior to New York's adoption of the warranty provisions of the U.C.C. Plaintiffs' second case, *Henry v. Rehab Plus., Inc.*, 404 F. Supp. 2d 435, 443 (E.D.N.Y. 2005), involved personal (specifically, lower back) injury, and thus was not a case in which privity of contract was even at issue. Plaintiffs' final case, *Frank's*

7

*Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980 (1980), which relaxed the privity requirement in the case of a remote manufacturer, is not binding on this Court, and is directly contrary to New York law. *See, e.g., Miller v. General Motors Corp.*, 471 N.Y.S.2d 280, 282 (1st Dep't 1984).

Thus, Plaintiffs have offered no support for their implied warranty causes of action against General Motors and ElDorado, which, Defendants submit, should be dismissed as a matter of very well-settled New York law.

### III.   Plaintiffs' Fraud Claims Fail As A Matter Of Law

Plaintiffs' attempt to supplement the single-paragraph of information-and-belief allegations that they call their fraud claim demonstrates that this claim must be dismissed with prejudice, as well. Plaintiffs argue that Defendants – they never say which one – made a series of representations, one or more of which allegedly was fraudulent. First, Plaintiffs contend that "Defendants first represented that the Uplanders would be suitable for use as wheelchair-accessible taxicabs," although they do not state when, to whom, or by whom such representations were made. Opp. Br. at 13. Then, after a demonstration of the vehicles to the TLC revealed that modifications would need to be made in order to render the vehicle useable, "Defendants represented that they could and would retrofit the vehicles to meet the TLC's requirements." Opp. Br. at 13. Mr. Freidman states in his affidavit that he was "shown the newly retrofitted vehicle in July 2006, and I was shocked at how poorly the vehicle performed." Freidman Aff. at ¶ 24. Mr. Freidman states that "[a]s a result of concerns raised by [the TLC's] Mr. Shenkman and me, ElDorado and General Motors brought representatives to New York and to compare the Uplander with another accessible vehicle manufactured by Braun." Freidman Aff. at ¶ 26. According to Mr. Freidman, he was assured that the shortcoming in the vehicles would be addressed. *Id.*

8

Thus, over five (5) months before Mr. Freidman placed his final order for the vehicles, and after the medallion auction already had taken place, Mr. Freidman recounts a series of representations alleged to provide part of the grounds for his fraud claim. Clearly, however, even leaving aside the failure to specify which defendant made which alleged representation(s), Plaintiffs (as well as the TLC) were acutely aware of issues with the vehicles, and Plaintiffs do not contend that they relied on any of the foregoing representations prior to placing their order for the vehicles. Indeed, *after* these alleged representations, and, again, prior to placing his final order for the vehicles, Mr. Freidman states that he advised Mr. Foerschler at ElDorado to "let me know as soon as the re-engineering had been completed and 'the tlc has reapproved' the Uplander." *Id.* at ¶ 30 (quoting Freidman Aff., Exh. J).

Mr. Freidman then states that on August 15, 2006 – over four (4) months prior to placing his final order for the vehicles – that he was told that the "re-engineering or 'upfit' of the initial two Uplanders was complete . . . [and] *was subsequently assured that the re-engineered Uplander had been approved by the TLC*." Freidman Aff. at ¶ 32 (emphasis added). Mr. Freidman's statement concerning the alleged assurance that the TLC had approved the two vehicles is the linchpin for Plaintiffs' fraud claim.[2]

Plaintiffs do not indicate *who* assured Mr. Freidman that the two re-engineered Uplanders had been approved, whether a defendant or the TLC itself, and, if a defendant, then which one. Nor do Plaintiffs indicate *when* Mr. Freidman was informed of the TLC's approval of the two vehicles, just that it was at some point after he was informed that the "upfit" was complete. In

---

[2] The Court should "disregard[ ] facts asserted in memorandum of law" that do not appear in the complaint or supporting affidavit. *Langenberg v. Sofair*, No. 03 Civ. 8339 (KMK), 2006 WL 2628348, at *4 (S.D.N.Y. Sept. 11, 2006).

9

fact, as Defendants pointed out in their moving brief, Plaintiffs never state *whether* (or when) the TLC, in fact, did approve the vehicles!

Nor have Plaintiffs pled (or described) any facts giving rise to any inference of fraudulent intent, let alone the strong inference required under Rule 9(b). On the contrary, the facts alleged, which indicate that the vehicles were subject to TLC approval, give rise to the rather obvious inference that such approval had to have been sought. If approval was sought and not obtained, the TLC certainly would know this and Plaintiffs certainly could find it out. Such critical omissions, coupled with vague group pleading and improper information and belief allegations fall far short of adequately alleging fraud.

Indeed, Plaintiffs' brief and the materials submitted therewith confirm that Plaintiffs' newly-added fraud claim is nothing more than a thinly-veiled attempt to recast deficient breach of warranty causes of action in terms of fraud. Fatally, Plaintiffs have not alleged (or even attempted to allege) any legal duty separate from the duty to perform under the limited warranties, and there are no well-pled special damages caused by any representation collateral to the warranties at issue. Thus, Defendants submit, the express terms of their respective written limited warranties provide the proper grounds on which the respective rights and liabilities of these two Defendants should be determined.

## CONCLUSION

For the foregoing reasons, and the reasons stated in Defendants' Opening Brief, all claims against Defendants General Motors and ElDorado should be dismissed in their entirety and, with the exception of Plaintiffs' breach of express warranty cause of action for which leave to amend is appropriate, with prejudice.

Dated:  January 7, 2009

                        **AKIN GUMP STRAUSS HAUER & FELD LLP**

                        By:  /s/  Jamison A. Diehl
                              Robert H. Pees
                              Jamison A. Diehl
                              Akin Gump Strauss Hauer & Feld LLP
                              One Bryant Park
                              New York, New York 10036
                              (212) 872-1000 (Telephone)
                              (212) 872-1002 (Facsimile)

                              *Attorneys for Defendants ElDorado National, Inc.*


                        **LAVIN, O'NEIL, RICCI, CEDRONE & DISIPIO**

                        By:  /s/  Timothy J. McHugh
                              Timothy J. McHugh
                              Lavin, O'Neil, Ricci, Cedrone & DiSipio
                              420 Lexington Avenue
                              Graybar Building
                              Suite 2900
                              New York, New York 10170
                              Telephone:  (212) 319-6898
                              Facsimile:  (212) 319-6932

                              *Attorneys for Defendant General Motors Corporation*