Paul H. Levinson, Esq. (PL 5528)
**McLaughlin & Stern, LLP**
260 Madison Avenue, 18th Floor
New York, New York 10016
(212) 448-1100 (ext. 190)
*Local New York Counsel for*
*Defendant Arcola Sales & Service Corp.*

Christopher E. Hartmann, Esq. (CH 4873)
*Admitted Pro Hac Vice*
**Wacks & Hartmann, LLC**
404 Park Avenue South, 14th Floor
New York, New York
(973) 644-0770 (ext. 204)
*Attorneys for Defendant Arcola Sales & Service Corp.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EVGENY A. FREIDMAN, VLADIMIR BASIN, MAMED DZHANIYEV, Victory Taxi Garage Inc., Tunnel Taxi Management, LLC, Downtown Taxi Management, LLC, Bazar Taxi Inc., Patron Taxi LLC, Grappa Taxi LLC, Cognac Taxi LLC, Calvados Taxi LLC, Tequila Taxi LLC, Jack Daniels Taxi LLC, Murzik Taxi Inc., Malinka Taxi Inc., Yagodka Taxi Inc., Persik Taxi Inc., Bratishka Taxi Inc., Purno Taxi Inc., Piguet Taxi Inc. Kormilitsa Taxi Inc., Prada Taxi, Inc., Student Taxi Inc., Hublot Taxi Inc., Torpedo Taxi Inc., Black Label Taxi LLC, Praga Taxi Inc., Two Hump Taxi LLC, Kroshka Taxi Inc., Lacoste Taxi Inc., Sangria Taxi LLC, Volba Taxi Inc., <br><br> Plaintiffs, <br><br> v. <br><br> GENERAL MOTORS CORP., EL DORADO NATIONAL, INC., and ARCOLA SALES & SERVICE CORP., <br><br> Defendants. | Civ. No. 08 CV-02458 (SAS) <br><br><br> **ARCOLA'S SUMMARY JUDGMENT BRIEF** |

*On the Brief:*

Christopher E. Hartmann, Esq.

## PRELIMINARY STATEMENT

The Court is already quite familiar with this case. Plaintiffs are owners of several taxicab companies. They purchased 52 Chevrolet Uplander model automobiles manufactured by defendants General Motors Corporation ("GM") and El Dorado National ("El Dorado"), modified and retrofitted for use as handicapped accessible taxicabs in and around New York City. Defendant Arcola Sales and Service Corp. ("Arcola") was the selling dealer. By their original Complaint and three later amended versions of that pleading, plaintiffs have alleged a variety of fraud and contractual claims against defendants. Plaintiffs recently settled their claims against El Dorado. By its Order and Opinion dated May 29, 2009, this Court dismissed the Third Amended Complaint against GM.

What remains of Plaintiffs' case is a single cause of action against Arcola, one for common law breach of contract. Arcola sold to plaintiffs exactly what they ordered, commercial vehicles manufactured by GM and El Dorado according to Plaintiffs' written specifications, as stated in 52 separate new vehicle orders. Arcola did not design, manufacture or modify the cars. Plaintiffs state in their own pleading that their complaints about the performance and durability of the cars implicate design and/or manufacturing defects. Because Arcola sold the cars subject only to manufacturers' warranties, it fully complied with every sales contract under either common law or pursuant to applicable portions of New York's Uniform Commercial Code governing sales of commercial goods. Plaintiffs are unable to state a triable issue of fact against Arcola on any contractual claim. Accordingly, summary judgment should now be granted.

## STATEMENT OF FACTS

The facts necessary to decide this motion are undisputed. (*See*, Arcola's Local Rule 56.1 Statement of Facts ("SOF")). Arcola did not design, manufacture or modify the cars. (SOF, ¶12, ¶¶14-15 and ¶25). Its actions as selling dealer consisted of receiving each vehicle from the manufacturers, checking the operations of all systems (i.e. engine, lights, horn and heater), adding fire extinguishers, safety kits and first aid kits and delivering the cars to Plaintiffs in exchange for payment. (Id., ¶15.) Plaintiffs painted the taxis and added other equipment such as lights and fare meters after they accepted the cars. (Id., ¶16.)

Plaintiffs contend that the cars proved to be unreliable and unsafe after they voluntarily accepted delivery of the cars and subjected them to the rigors of commercial livery service in New York City for many months. (Id., ¶18 and ¶21). Plaintiffs allege the following "safety problems" with the cars:

- Doors opening and falling off the hinges while in operation;
- Axles breaking away from the suspension of the vehicles;
- Tangled brake lines;
- Faulty engine mounts coming loose;
- Static stability and handling issues;
- Problems with defective trailing arm bushings;
- Mufflers falling off hangars and dangling while in operation (among other problems);
- Constant transmission failures; and
- Problems with on-board diagnostic technology.

(Id., ¶24.) They contend that the vehicles, "as received by plaintiffs," were "defective, and were not capable of meeting the standards of quality and performance for a vehicle of its kind,"

namely wheelchair accessible commercial taxicabs. (Id., ¶24.) Arcola never designed, manufactured, installed or modified any of these particular components. (Id., ¶25).

Plaintiffs do not remotely connect Arcola to the identified defects. In their own pleading, they do admit that the problems were caused by the manufacturers and not by Arcola. Plaintiffs themselves defeat their only claim against Arcola by specifically alleging that *Arcola was unable to cure the vehicles' "fundamental defects and engineering flaws, as designed, manufactured and made by defendants El Dorado and GM."* (Id., ¶25.) (Emphasis added.) They vaguely allege that Arcola "has materially breached the Vehicle Orders" (Id., ¶27) without identifying any other act or omission that conceivably amounted to such a breach.

The single remaining claim against Arcola cannot withstand application of the very contract that Plaintiffs seek to enforce. Plaintiffs admit that the Vehicle Orders were "valid and enforceable." (Id., ¶8.) Each signed Vehicle Order states as follows:

> 8. Warranty: This vehicle is sold under…the following conditions:
>
> Warranty – Sale of New Vehicle: The only warranties applying to this Vehicle are those offered by the Manufacturers. ***The selling Dealer sells this Vehicle "AS IS" and hereby disclaims all warranties, either express or implied, including any implied warranties of merchantability and fitness for a particular purpose.*** Any liability of the selling Dealer with respect to defects or malfunctions of this Vehicle, including, without limitation, those which pertain to performance or safety, whether by way of "strict liability," based upon the selling Dealer's negligence, or otherwise, is expressly excluded and Purchaser hereby assumes any such risks. The Manufacturers' warranties are not affected by this disclaimer of warranties by the selling Dealer. ***Purchaser hereby acknowledges that Dealer has no relationship with the Chassis Manufacturer and any claims relating to the chassis or chassis components must be pursued by the Purchaser directly with the Chassis Manufacturer or through one of its authorized dealers.*** (Rolfe Declaration, Exhibit A), (emphasis added).

The express terms of the parties' contracts limited Plaintiffs' recourse to GM and El Dorado for the alleged design and manufacturing defects. Arcola cannot be liable for them.

# ARGUMENT

## ARCOLA IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE TERMS OF THE VEHICLE SALES CONTRACTS WERE CLEAR AND UNAMBIGUOUS

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and real. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. *Id.* The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *Celotex v. Catrett*, 477 U.S. 317, 318 (1986).

### I. Plaintiffs are Unable to Pose a Triable Claim for Breach of Contract against Arcola

Under New York law, the essential elements of an action for breach of contract are: (1) formation of a contract between the parties; (2) performance by plaintiff; (3) non-performance by defendant; and (4) resulting damages to plaintiff. *Hidden Brook Air, Inc. v. Thabet Aviation International, Inc.*, 241 F.Supp. 2d 246, 259 (S.D.N.Y. 2002). In this case, Plaintiffs are incapable of establishing the last two elements, namely that Arcola failed to perform or that any conduct by Arcola resulted in damages incurred by plaintiffs.

In any breach of contract case, the court examines the four corners of the contract to ascertain the parties' intent. If the contract is unambiguous, its interpretation is a question of law and summary judgment is appropriate. *Ruttenberg v. Davidge Data Systems Corp.*, 215 A.D.2d 191 (1st Dep't 1995) ("Where a contract is straightforward and unambiguous, its interpretation

presents a question of law for the court."); *Austin v. Canbar Assocs., Inc.*, 175 A.D.2d 195, 196 (2nd Dep't 1991) (where "the intention of the parties is expressed in plain and unambiguous terms, the question [of contractual meaning] is one of law which may be decided on a motion for summary judgment.") A contract negotiated in the course of business is intended to achieve something definite and concrete. The parties should not be presumed to have entered into a meaningless writing. *Benvenuto v. Rodriguez*, 279 A.D. 162, 108 N.Y.S.2d 410 (1st Dept. 1951) *appeal denied*, 279 A.D. 777, 109 N.Y.S.2d 360 (1st Dept. 1952).

Each Vehicle Order stated a list of manufacturers' specifications and modifications to be made to the cars before delivery. (SOF, ¶10). Plaintiffs make only a vague assertion that "the vehicles were defective, and were not capable of meeting the standards of quality and performance for a vehicle of its kind." (Id., ¶¶24-25). As shown above, Plaintiffs aim their allegations of defects against GM and El Dorado. They do not specify how Arcola breached any terms of the contracts, in this case the Vehicle Orders. (Id., ¶24).

The terms of the parties' contracts provided that Arcola was merely the Dealer. (Id., ¶12). As such, Arcola was not responsible for defective design, manufacture or retrofit of the cars. (Id., *See*, "Additional Terms and Conditions Agreement"). Plaintiffs knew and agreed that Arcola's obligations under the contract were restricted to that of "Dealer." (Id.). The express contractual terms clearly distinguished the roles of the three defendants and separated their obligations from one another. Specifically the "Definitions" section reads:

> (a) "Dealer" shall mean the person or company to whom this Order is addressed and who shall become a party to this order by accepting it. . . (c) "Chassis Manufacturer" shall mean the division or corporation that manufactured the new vehicle or chassis identified in this Order, and (d) "Body Manufacturer" shall mean the division or corporation that manufactured the body mounted or built upon, and/or modified or adapted the chassis identified in this Order." (Id).

5

Plaintiffs admit Arcola's singular obligation was final delivery after the cars were modified and retrofitted by El Dorado: "[O]nce the vehicles were retrofitted, the vehicles were delivered to Arcola for final sale and delivery." (Id., ¶14). Arcola made no warranty of its own that the cars were built without defects or that they would perform satisfactorily as commercial vehicles. Therefore, Arcola fully satisfied all of its contractual obligations when it delivered the cars according to the Vehicle Orders.

For the same reasons, Plaintiffs are utterly incapable of ever proving that anything that Arcola did or failed to do as part of the order and delivery process resulted in damages to plaintiffs. The defective components about which they complain were designed, manufactured and installed by GM and/or El Dorado. Plaintiffs say that in their own pleading. In doing so, they blur the distinction between a breach of contract by the selling dealer and a breach of warranty by the manufacturer. Once again, the contracts for the sale of these commercial vehicles expressly limited plaintiffs' recourse to manufacturers' warranties, only. As a matter of law, Plaintiffs fail to state a triable claim against Arcola for breach of contract.

## II. Plaintiffs are Unable to Pose a Triable UCC Claim against Arcola

The result is the same if the contracts are analyzed as commercial sales of goods, governed by New York's Uniform Commercial Code ("the Code"). "The burden is on the buyer to establish any breach with respect to the goods accepted." (N.Y.C.L.S. UCC 2-607(4)).

First, Arcola fulfilled its contractual obligation by supplying Plaintiffs with cars manufactured by GM and modified by El Dorado according to the specifications stated in the Vehicle Orders. (Rolfe Decl., Ex. B, "Vehicle Delivery Dates"; SOF, ¶14). While Plaintiffs contend that they demanded that the "vehicles …be compliant with the [the New York City Taxi and Limousine Commission's ("TLC's")] specifications and suitable for use as wheelchair

accessible taxicabs in New York City" (SOF, ¶11), the record is devoid of any proof that the cars failed to comply with the specifications made in the Vehicle Orders. Plaintiffs had additional taxi fit-up work to do to the cars before they could be used as taxicabs. (Id., ¶16). Therefore, summary judgment is again appropriate on the breach of contract claim because plaintiffs are unable to establish any breach of the Vehicle Orders by Arcola. *See, Chouiniere's Trucking & Excavating, Inc. v. Michaels Group, Inc.*, 194 A.D.2d 971, 972-73 (App. Div. 3rd Dept, 1993), (granting summary judgment for seller because buyer failed to submit admissible proof that the goods delivered were nonconforming and unsuitable for their intended purpose).

Second, without identifying the extent of usage or the time from delivery to rejection, plaintiffs assert that the vehicles were "deposited" with Arcola, but without titles. (SOF, ¶26). Plaintiffs cannot establish "revocation of acceptance" under the Code even if such a claim had been the subject of a direct pleading. Revocation under §2-608 "must occur in a reasonable time after the buyer discovers or should have discovered the ground for it." N.Y. U.C.C. §2-608(2). The buyer's acceptance must occur before the latent defect, and the subsequent revocation must occur within a reasonable time after the buyer discovered, or should have discovered, the defect. *Sepulveda v. American Motor Sales Corp.*, 137 Misc. 2d 543, 521 N.Y.S. 2d 387 (Civ. Ct 1987).

Plaintiffs admit that they learned of inconsistencies in the cars' specifications upon delivery of the first vehicle. (SOF, ¶18.) They also admit that they had the opportunity and the inclination to rescind their contracts and order vehicles from a different manufacturer. (Id., ¶19.) They elected not to do so. Eventually, they took delivery of all 52 cars. (Id., ¶17.) Plaintiffs fail to say that the cars passed TLC inspection (and hence met TLC specifications) in order to be issued medallions and then driven in New York City as handicapped accessible taxis. For example, the car with the least usage had been driven 24,132 miles by the time it was

"deposited" with Arcola. (SOF, ¶22). Plaintiffs attempt to circumvent their obligation to make a timely and full revocation by claiming that they had "no choice" but to wait for "Defendants" to cure any defects in the vehicles, a claim that is inconsistent with the facts of the case and their other assertions. (Id., ¶20).

Plaintiffs did not act reasonably to revoke acceptance under N.Y.U.C.C. §2-608. Despite assertions of major defects, Plaintiffs used the vehicles and waited nearly ten months to return the first car and nineteen months from first delivery to return the last one. (See, Rolfe Decl., Ex. B and C, VIN # 6D246249 and VIN #7D176499, respectively). Most of the cars had nearly or above the 63,000 miles that the average New York taxicab tolls in a year, and most had been on the road for at least a year. (Id., Ex. B and C; and see, for illustrative purposes, Ex. D, "The New York Taxicab Fact Book"; SOF, ¶22). Such protracted delay and hard, commercial livery usage demonstrate that Plaintiffs failed to act reasonably. *See, Shokai Far East, Ltd. v. Energy Conservation Sys., Inc.*, 628 F. Supp. 1462 (S.D.N.Y. 1986), (buyer's use of product after testing constituted acceptance when notice of rejection was made more than five months after shipment); *Republic Corp. v. Procedyne Corp.*, 401 F. Supp. 1061, 1070 (S.D.N.Y. 1975), (buyer's attempted revocation was untimely when it took place nearly a year after acceptance and where the buyer had ample opportunity to test the goods as early as seven months before the attempted revocation.) Courts have found shorter delays unreasonable for purposes of revoking acceptance. *Import Traders, Inc. v. Frederick Mfg. Corp.*, 457 N.Y.S.2d 742, 743-44 (N.Y. Civ. Ct. 1983), (five months constitutes unreasonably long time to revoke acceptance).

Furthermore, New York courts have held that prior notice of potential nonconformity is at odds with a subsequent claim for revocation of acceptance. *Sobiech Int'l Staple and Machine*

*Co.*, 867 F.2d 778, 779 (2d Cir. 1989) (rejecting claim for revocation of acceptance noting that buyer was "well aware of difficulties with the [goods] before deciding to purchase it.")

While the timeliness of rejection is ordinarily a question of fact, it can also be a matter of law susceptible to summary judgment. *Tabor v. Logan*, 114 App. Div. 2d 894 (2d Dept. 1985). When the only possible inference can be that the timeliness of rejection was unreasonable, there is no material fact in dispute regarding rejection and summary judgment is appropriate. *Cf. Bangor Clothing Co. v. Superior Sportswear Corp.*, 22 AD2d 864, 254 N.Y.S.2d 415 (1964), *aff'd* 16 NY2d 1018, 265 N.Y.S.2d 901 (1965); *Brown & Lowe Co. v. Potolski*, 221 App Div. 299, 223 N.Y.S.2d 71 (1927). Plaintiffs themselves modified and extensively used the vehicles as New York City taxicabs; Plaintiffs did not reject them.

Third, any argument that the continued use of the defective vehicles was commercially necessary is unpersuasive. A party may not do what is clearly at odds with its legal position – continue to use the goods that he contends are non-conforming. *See, Sobiech*, 867 F.2d at 779; *Syntex Corp.* 786 F.2d at 75. Plaintiffs' conduct was at odds with any viable revocation claim. Plaintiffs state that they "had no choice but to wait for Defendants to comply with their representations and promises." (SOF, ¶20). Yet, Plaintiffs continued to accept delivery of more cars and placed them into service without expressly reserving the right to reject all remaining defective units. *Barrett Paving Materials, Inc. v. U.S. Fid. & Guar. Co.*, 118 A.D. 2d 1039 (3rd Dept. 1986). In short, Plaintiffs accepted the cars. A most indulgent reading of Plaintiffs' Third Amended Complaint reveals the futility of any contractual claim as well as the futility of any further amendment.

## CONCLUSION

Plaintiffs allege design and manufacture defects only. Arcola did not design or manufacture the cars. Plaintiffs have not articulated how Arcola breached any contract as the selling dealer or how Arcola caused plaintiffs any alleged damages, two essential elements of any claim for breach of contract. Arcola satisfied its contractual obligations when it delivered the cars to plaintiffs in accordance with the written Vehicle Orders. Those same Vehicle Orders limited the buyers' remedies for defects in design and manufacture to warranties issued by the manufacturers, in this case GM and El Dorado. Plaintiffs fail to pose any triable issues of fact against Arcola. Therefore, after three amendments to the Complaint, Arcola is entitled to summary judgment on plaintiffs' remaining claim.

**WACKS & HARTMANN, LLC**
*Attorneys for Defendant*
*Arcola Sales & Service Corp.*

By: *[signature]*
Christopher E. Hartmann, Esq.
(Admitted *Pro Hac Vice*)

**McLaughlin & Stern, LLP**
*Local New York Attorneys for Defendant*
*Arcola Sales & Service Corp.*

By: *[signature]*
Paul H. Levinson, Esq.

New York, New York
Dated: June 26, 2009

10