UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

EVGENY A. FREIDMAN, VLADIMIR
BASIN, MAMED DZHANIYEV, VICTORY
TAXI GARAGE INC., TUNNEL TAXI
MANAGEMENT, LLC, DOWNTOWN
TAXI MANAGEMENT, LLC, BAZAR TAXI
INC., PATRON TAXI LLC, GRAPPA TAXI
LLC, COGNAC TAXI LLC, CALVADOS
TAXI LLC, TEQUILA TAXI LLC, JACK
DANIELS TAXI LLC, MURZIK TAXI INC.,
MALINKA TAXI INC., YAGODKA TAXI
INC., PERSIK TAXI INC., BRATISHKA
TAXI INC., PURNO TAXI INC., PIGUET
TAXI INC., KORMILITSA TAXI INC.,
PRADA TAXI, INC., STUDENT TAXI INC.,
HUBLOT TAXI INC., TORPEDO TAXI
INC., BLACK LABEL TAXI LLC, PRAGA
TAXI INC., TWO HUMP TAXI LLC,
KROSHKA TAXI INC., LACOSTE TAXI
INC., SANGRIA TAXI LLC, VOLBA TAXI
INC.,

              Plaintiffs,

      - against -

GENERAL MOTORS CORP., ELDORADO
NATIONAL, INC., and ARCOLA SALES &
SERVICE CORP.,

              Defendants.

-------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/22/10

**OPINION AND ORDER**

08 Civ. 2458 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

Plaintiffs, a group of taxi companies and the individual owners of handicap-accessible taxicab medallions permitting the operation of handicap-accessible taxicabs in New York City (collectively, the "Taxi Companies"), brought the instant diversity action[1] against Arcola Sales & Service Corporation ("Arcola" or "defendant"), the last remaining defendant.[2]  Arcola now moves for summary judgment seeking to dismiss plaintiffs' remaining breach of contract

---

[1]     The parties agree that the Vehicle Orders are contracts for the sale of goods and, as such, are governed by New York's Uniform Commercial Code ("UCC").

[2]     Plaintiffs also sued General Motors Corp. ("GM") and ElDorado National, Inc. ("ElDorado"). On December 5, 2008, GM and ElDorado filed a Joint Motion to Dismiss Plaintiff's Second Amended Complaint. Their motion was granted in full, but plaintiffs were granted leave to file a Third Amended Complaint ("TAC"), which they did. GM subsequently moved to dismiss plaintiffs' TAC. On May 29, 2009, this Court granted GM's motion and dismissed GM from this case. *See Freidman v. General Motors Corp.*, No. 08 Civ. 2458, 2009 WL 1515031 (S.D.N.Y. May 29, 2009) (the "Dismissal Order"). Plaintiffs timely appealed the Dismissal Order . The Second Circuit, however, dismissed the appeal for lack of jurisdiction because the Dismissal Order was not a final decision as contemplated in 28 U.S.C. § 1291. *See* 1/15/10 USCA Mandate, issued on March 12, 2010. In the meantime, ElDorado settled with plaintiffs who dismissed ElDorado from this action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). *See* 11/17/09 Stipulation of Dismissal with Prejudice, So Ordered on December 2, 2009.

2

claim.[3]   For the following reasons, Arcola's motion for summary judgment is

granted, the TAC is dismissed in its entirety, and this case is closed.

## II.   BACKGROUND

The New York City taxicab industry is a private industry, closely

regulated by the New York City Taxi & Limousine Commission ("TLC").[4]  "A

'taxicab medallion' is a metallic emblem affixed to the hood of a New York City

taxicab that represents a license from the City, authorizing the operation of a

taxicab within the City of New York."[5]  "An 'Accessible Medallion' is a restricted

medallion and is defined as a taxicab license valid for use only with a vehicle

---

[3]      Arcola originally filed its motion for summary judgment on June 29,
2009. Prior thereto, on June 15, 2009, plaintiffs' former counsel, Herrick,
Feinstein LLP, moved to withdraw. This Court granted the withdrawal motion on
June 30, 2009. Plaintiffs' new counsel filed a Notice of Appearance on August 5,
2009. Plaintiffs were given a short extension of the discovery deadline to
accommodate their change of counsel. On September 15, 2009, Arcola sent a
letter (the "9/15/09 Letter") advising this Court of its intention to withdraw its
previously-filed motion for summary judgment, without prejudice to re-filing after
the conclusion of the extended discovery period. This Court approved of the
withdrawal of the summary judgment motion in a memo endorsement to the
9/15/09 Letter. Arcola then re-filed the instant motion on March 23, 2010.

[4]      See TAC ¶ 41.

[5]      Id. ¶ 43.

3

accessible to a passenger using a wheelchair."[6]  The total number of taxicab

medallions in New York City is limited by law.[7]

Plaintiffs Evgeny Freidman and two co-investors, Vladimir Basin and

Mamed Dzhaniyev, won the bid for fifty-four Accessible Medallions at the TLC's

June 2006 auction.  In late 2006, plaintiffs contracted with Arcola for the purchase

of fifty-two handicap-accessible vehicles (the "Vehicles") pursuant to fifty-two

separate Vehicle Orders, all of which were valid , enforceable, and identical in

format.[8]  The Vehicles were to be supplied by GM, retrofitted by ElDorado, and

---

[6]      *Id.* ¶ 45 (quotation marks and citation omitted).  At present, out of the 13,237 taxicab medallions in New York City, only 231 are Accessible Medallions. *See id.*

[7]      *See id.* ¶ 43.

[8]      *See* Arcola's Local Rule 56.1 Statement of Material Facts as to Which There Does Not Exist a Genuine Issue ("Def. 56.1 Stmt") ¶ 7 ("Plaintiffs signed 'Vehicle Orders' to purchase Chevy Uplanders from Arcola."), ¶ 8 ("The Vehicle Orders among plaintiffs and Arcola for the sales of the Chevrolet Uplanders for commercial use were valid and enforceable.").

then delivered by Arcola,[9] the Dealer.[10]  Each Vehicle Order contains a list of

manufacturing specifications and modifications to be made to the Vehicles before

delivery.[11]  Each Vehicle Order also includes Additional Terms and Conditions,

one of which states as follows:

> 8. **Warranty:** This vehicle is sold under one of the following conditions: (Initial appropriate line)
>
> _____ Warranty - SALE OF NEW VEHICLE: The only warranties applying to this Vehicle are those offered by the Manufacturers. The selling Dealer sells this Vehicle "AS IS" and hereby disclaims all warranties, either express or implied, including any implied warranties-of-merchantability-and-fitness for a particular purpose. Any liability of the selling Dealer with respect to defects or

---

[9]  "[T]he retrofitting process was intended to work as follows: (a) GM would provide ElDorado with the Chevrolet Uplander frame; (b) based on GM's design and with oversight from GM, ElDorado then retrofitted the vehicles for wheelchair-accessibility at its factory in Kansas; and (c) once the vehicles were retrofitted, the vehicles were delivered to Arcola for final sale and delivery."  TAC ¶ 46.

[10]  *See* Def. 56.1 Stmt ¶ 10 ("The Vehicle Orders specifically defined Arcola as the 'Dealer.'").  The "Definitions" section of the Vehicle Orders states: "It is understood by the Purchaser and Dealer that the Dealer is not an agent of the Manufacturers.  The Dealer and Purchaser are the sole parties to this Order." Vehicle Order, Ex. A to the 6/24/09 Declaration by Andrew Rolfe in Support of Arcola Sales & Service Corp.'s Summary Judgment Motion ("Rolfe Decl."), at 3 of 4.  This is the same Declaration submitted by Andrew Rolfe when Arcola first moved for summary judgment on June 29, 2009.  It has been resubmitted in connection with the instant motion.

[11]  *See* Def. 56.1 Stmt ¶ 11.

> malfunctions of this Vehicle including, without limitation, those which pertain to performance or safety, whether by way of "strict liability," based upon the selling Dealer's negligence, or otherwise, is expressly excluded and Purchaser hereby assumes any such risks. The Manufacturers' warranties are not affected by this disclaimer of warranties by the selling Dealer. Purchaser hereby acknowledges that Dealer has no relationship with the Chassis Manufacturer and any claims relating to the chassis or chassis components must be pursued by the Purchaser directly with the Chassis Manufacturer or through one of its authorized dealers.[12]

In addition, the Vehicle Description section of the Vehicle Orders includes the

following description: "Tlc Approved Taxi Excl Tinted Glass And Paint."[13]

The Vehicles were purchased with the understanding that they would

last for approximately three years, if used in a reasonably consistent manner with

other handicap-accessible taxicabs.[14] Plaintiffs claim that they informed people at

GM, ElDorado and Arcola of the requirement that the "'vehicles . . . be compliant

with [the] TLC's specifications and suitable for use as wheelchair accessible

taxicabs in New York City.'"[15] Despite this notification, the Vehicles delivered by

---

[12] Vehicle Order, Ex. A to the Rolfe Decl., at 3 of 4.

[13] *Id.* at 2 of 4.

[14] *See* 4/23/10 Declaration of Evgeny Freidman ("Freidman Decl.") ¶ 4.

[15] Def. 56.1 Stmt ¶ 12 (quoting TAC ¶ 53). Those allegedly so informed include Chuck Compagnoni, Denny Foerschler and Andrew Rolfe. Chuck Compagnoni is the GM Fleet Account Executive for the Northeast Region;

Arcola did not conform to TLC specifications for handicap-accessible taxicabs.[16]
According to plaintiffs, issues of non-compliance with the Vehicles were not
immediately evident.[17]  In any event, problems resulting from defects in the
Vehicles' design and manufacture became apparent over time.[18]  Problems also
arose with regard to the subsequent repairs and modifications made to the

---

Denny Foerschler is with ElDorado's Mobility Division, Eastern Region. *See* TAC
¶ 52.  Andrew Rolfe is the principal owner of Arcola. *See* Rolfe Decl. ¶ 1.

[16]      *See* Plaintiffs' Statement of Material Facts as to Which There Exists
an Issue to be Tried ("Pl. 56.1 Stmt") ¶ 3.

[17]      *See* Freidman Decl. ¶ 11 ("By the very nature of automobiles, the
subsequent issues that arose with the Vehicles were not immediately evident."); ¶
13 ("It subsequently became apparent that none of the Vehicles were capable of
meeting standards of quality and performance required by the TLC or Plaintiffs.").
Arcola disputes the timing of plaintiffs' knowledge of non-compliance, claiming
that plaintiffs admittedly found inconsistencies with vehicle specifications upon
delivery of the first two Vehicles. *See* Def. 56.1 Stmt ¶ 18 (citing TAC ¶ 67,
which states: "Plaintiffs further realized that the first retrofitted Chevy Uplander
Defendants delivered in July 2006 was materially inferior to the Chevy Uplander
that Defendants had previously shown to them . . . . ").

[18]      *See* Plaintiffs' Response to and Additional Statements of Material
Facts Pursuant to Local Civil Rule 56.1 ("Pl. 56.1 Resp.") ¶¶ 31-32 ("In addition
to problems arising from the Vehicles' design and manufacture, problems also
arose as a result of repairs and modification, which Arcola was involved in
performing.").

Vehicles,[19] with which Arcola was directly involved.[20] Plaintiffs were unhappy

with the subsequent repairs and modifications made by defendants and eventually

"deposited" the Vehicles with Arcola, without the titles.[21] Below is a chart

summarizing the dates the Vehicles were delivered by Arcola to plaintiffs,[22] the

dates the Vehicles were returned by plaintiffs to Arcola,[23] the latest dates of TLC

---

[19]   *See id.*

[20]   It is unclear, however, whether Arcola was paid for any subsequent
repair work. *Compare* Pl. 56.1 Resp. ¶¶ 33-34 ("Arcola undertook and was paid
for repair work on the Vehicles.") *with* Pl. 56.1 Stmt ¶ 4 ("Given that plaintiffs
were not required to pay for the repairs and modifications to the [V]ehicles post-
delivery, Arcola undertook those repairs and modifications pursuant to contractual
or other legal obligations.") (citing Freidman Decl. ¶ 12 ("Plaintiffs did not make
an additional payment for this work.")).

[21]   *See* Def. 56.1 Stmt ¶¶ 34-35. *See also* Pl. 56.1 Stmt ¶¶ 7-8 (stating
that plaintiffs rejected and rescinded their contracts in a reasonable and timely
manner) (citing Freidman Decl. ¶ 14 ("Plaintiffs were forced to return the
Vehicles. Plaintiffs would have done so sooner but for certain ongoing
investigations, discussions, assurances, repairs and modifications involving
Defendants.")).

[22]   Taken from Ex. B of the Rolfe Decl.

[23]   Taken from Taxi Return Summary, Ex. C of the Rolfe Decl.

8

inspections (P for Passed, F for Failed),[24] and the Vehicles' accrued mileage upon return to Arcola.[25]

| VIN # | Date Delivered | Date of Last TLC Exam | Date Returned | Days Used | Mileage |
|---|---|---|---|---|---|
| 7D102429 | 12/08/06 | 05/21/07 (P) | 08/02/07 | 237 | 29,415 |
| 6D246249 | 09/06/06 | 05/14/07 (P) | 07/30/07 | 327 | 42,277 |
| 7D175294 | 04/26/07 | 09/13/07 (P) | 10/17/07 | 174 | 28,189 |
| 6D247532 | 09/06/06 | 09/10/07 (P) | 10/17/07 | 406 | 65,404 |
| 7D128507 | 04/11/07 | 09/12/07 (F) 05/10/07 (P) | 09/24/07 | 166 | 24,132 |
| 7D129091 | 04/11/07 | 10/01/07 (P) | 11/16/07 | 219 | 39,940 |
| 7D123024 | 03/13/07 | 09/18/07 (P) | 11/16/07 | 248 | 44,665 |
| 7D128257 | 03/27/07 | 09/13/07 (P) | 11/16/07 | 234 | 49,247 |
| 7D123239 | 02/28/07 | 09/05/07 (P) | 11/16/07 | 261 | 41,881 |
| 7D128984 | 04/11/07 | 09/13/07 (P) | 11/16/07 | 219 | 39,828 |
| 7D127898 | 03/20/07 | 09/06/07 (P) | 11/16/07 | 241 | 37,220 |
| 7D172251 | 04/30/07 | 09/17/07 (P) | 11/16/07 | 200 | 31,323 |
| 7D176816 | 04/17/07 | 09/19/07 (P) | 12/14/07 | 241 | 39,732 |
| 7D129038 | 04/30/07 | 09/19/07 (P) | 12/14/07 | 228 | 36,630 |
| 7D128835 | 04/11/07 | 09/12/07 (P) | 12/26/07 | 259 | 43,551 |

---

[24]     Taken from TLC Inspection History - Cars Sold by Arcola to Plaintiffs, Ex. A of the Declaration of Christopher E. Hartmann, Esq. in Support of Defendant Arcola's Reply to Plaintiffs' Opposition to Summary Judgment (hereinafter "TLC Inspection History").

[25]     Taken from Ex. C of the Rolfe Decl.

9

| 7D127065 | 03/29/07 | 09/19/07 (P) | 12/26/07 | 272 | 46,879 |
|----------|----------|--------------|----------|-----|--------|
| 7D102973 | 12/08/06 | 05/30/07 (P) | 12/26/07 | 383 | 49,077 |
| 7D128041 | 03/27/07 | 09/19/07 (P) | 12/26/07 | 274 | 49,290 |
| 7D127858 | 03/20/07 | 09/12/07 (P) | 12/26/07 | 281 | 46,900 |
| 7D122529 | 02/23/07 | 09/24/07 (P) | 02/11/08 | 353 | 63,828 |
| 7D127727 | 03/19/07 | 09/21/07 (P) | 02/11/08 | 329 | 57,004 |
| 7D176103 | 04/30/07 | 09/07/07 (P) | 02/11/08 | 287 | 52,577 |
| 7D175421 | 05/02/07 | NA | 02/11/08 | 285 | 57,756 |
| 7D120098 | 02/28/07 | 09/05/09 (P) | 02/11/08 | 348 | 53,072 |
| 7D176341 | 05/02/07 | NA | 02/11/08 | 285 | 55,012 |
| 7D122437 | 02/16/07 | NA | 02/12/08 | 361 | 62,939 |
| 7D121031 | 02/22/07 | 09/11/07 (P) | 02/12/08 | 355 | 60,252 |
| 7D121138 | 03/13/07 | 09/28/07 (P) | 02/12/08 | 336 | 60,830 |
| 7D127934 | 03/27/07 | 09/06/07 (P) | 02/12/08 | 322 | 55,528 |
| 7D127845 | 03/27/07 | 09/24/07 (P) | 02/20/08 | 330 | 64,538 |
| 7D129248 | 04/11/07 | 09/19/07 (P) | 02/20/08 | 315 | 46,422 |
| 7D123906 | 03/21/07 | 09/06/07 (P) | 02/20/08 | 336 | 58,735 |
| 7D126284 | 03/19/07 | 09/04/07 (P) | 02/20/08 | 338 | 58,800 |
| 7D174145 | 04/30/07 | 09/19/07 (P) | 02/26/08 | 302 | 58,751 |
| 7D121216 | 02/16/07 | 09/29/07 (P) | 02/26/08 | 375 | 64,285 |
| 7D121725 | 02/21/07 | 09/10/07 (P) | 02/27/08 | 371 | 60,183 |
| 7D122404 | 02/16/07 | 09/13/07 (P) | 02/27/08 | 376 | 64,313 |
| 7D122213 | 03/19/07 | 09/28/07 (P) | 02/27/08 | 345 | 61,411 |
| 7D176853 | 04/30/07 | 09/20/07 (P) | 03/18/08 | 323 | 50,337 |

| 7D126940 | 03/20/07 | 09/28/07 (P) | 03/18/08 | 364 | 67,803 |
| 7D127476 | 03/20/07 | 09/25/07 (P) | 03/28/08 | 374 | 69,036 |
| 7D121562 | 02/28/07 | 9/26/09 (F/P) | 03/28/08 | 394 | 73,627 |
| 7D176793 | 04/30/07 | 09/20/07 (P) | 04/02/08 | 338 | NA |
| 7D120208 | 02/21/07 | 9/18/07 (F/P) | 04/02/08 | 406 | 70,675 |
| 7D175671 | 04/17/07 | 10/01/07 (P) | 04/16/08 | 365 | 64,017 |
| 7D176239 | 04/30/07 | 09/14/07 (P) | 04/16/08 | 352 | 65,837 |
| 7D176499 | 05/02/07 | 09/07/07 (P) | 04/16/08 | 350 | 64,741 |

## III.   APPLICABLE LAW

### A.   Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[26] "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect

---

[26]   Fed. R. Civ. P. 56(c).

the outcome of the suit under the governing law.'"[27]   "[T]he burden of

demonstrating that no material fact exists lies with the moving party . . . ."[28]

"When the burden of proof at trial would fall on the nonmoving party,

it ordinarily is sufficient for the movant to point to a lack of evidence to go to the

trier of fact on an essential element of the nonmovant's claim.  In that event, the

nonmoving party must come forward with admissible evidence sufficient to raise a

genuine issue of fact for trial in order to avoid summary judgment."[29]   In sum, to

defeat a motion for summary judgment, the nonmoving party must raise a genuine

issue of material fact.[30]   The nonmoving party must do more than show that there

is "'some metaphysical doubt as to the material facts'"[31] and it "'may not rely on

---

[27]    *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008)).

[28]    *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).

[29]    *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing, *inter alia*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (explaining that the "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial")).

[30]    *See id.*

[31]    *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

conclusory allegations or unsubstantiated speculation.'"[32]  However, "'all that is required [from the nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[33]

In determining whether a genuine issue of material fact exists, the court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences" in that party's favor.[34]  However, "'only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.'"[35]  "'Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[36]  Summary judgment is

---

[32]     *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

[33]     *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

[34]     *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson*, 477 U.S. at 247-50, 255).

[35]     *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir. 1997)).

[36]     *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).

therefore "appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[37]

## B.    Breach of Contract

"Under New York law, 'an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.'"[38]   In any breach of contract case, the court must examine the four corners of the contract to ascertain the intent of the parties.   If a contract is unambiguous, its interpretation is a question of law and summary judgment is appropriate.[39]

---

[37]   *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009).

[38]   *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998) (quoting *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994)).   *Accord Calgon Carbon Corp. v. WDF, Inc.*, No. 08 Civ. 4407, 2010 WL 1244766, at *5 (S.D.N.Y. Mar. 25, 2010) ("To establish a prima facie case for breach of contract under New York law, a plaintiff must prove the following elements: (i) the existence of a contract; (ii) performance of the contract by one party; (iii) breach by the other party; and (iv) damages suffered as a result of the breach.").

[39]   *See Aon Fin. Prods, Inc. v. Societe Generale*, 476 F.3d 90, 95-96 (2d Cir. 2007) (citing *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 139 (2d Cir. 2000) ("Where the parties' intent is unambiguously conveyed by the plain meaning of the agreements, then interpretation is a matter of law[.]")).

## IV.   DISCUSSION

Plaintiffs oppose Arcola's summary judgment motion, arguing that there are disputed issues of material fact as to whether: (1) the Vehicles sold to plaintiffs were "TLC Approved;" (2) plaintiffs' revocation of acceptance was timely and reasonable; and (3) Arcola had an obligation to repair the Vehicles, which it breached. Plaintiffs' arguments, lacking in merit as to law and/or facts, cannot defeat an award of summary judgment in Arcola's favor.

### A.   There Was No Breach of Contract by Arcola

#### 1.   Disclaimer of Warranties

The terms of the Vehicle Orders provided that Arcola was merely the Dealer and, as such, was not responsible for the defective design, manufacture and/or retrofit of the Vehicles. Plaintiffs agreed that Arcola's obligations under the Vehicle Orders were restricted to that of "Dealer." The express terms of the Vehicle Orders clearly distinguished the roles of the three defendants and separated their obligations from one another. Specifically, the Vehicles Orders' "Definitions" section provides as follows:

> As used in this Order, the terms (a) "Dealer" shall mean the person or company to whom this Order is addressed and who shall become a party to this [O]rder by accepting it, (b) "Purchaser" shall mean the party whose signature appears on the face of this Order and the company or

15

corporation for whom they are an authorized agent, (c) "Chassis Manufacturer" shall mean the division or corporation that manufactured the new vehicle or chassis identified in this Order, and (d) "Body Manufacturer shall mean the division or corporation that manufactured the body mounted or built upon, and/or modified or adapted the chassis identified in this Order.[40]

Arcola's only obligation was final delivery after the Vehicles were modified and retrofitted by ElDorado. Arcola made no warranty of its own that the cars were built without defect or that they would perform satisfactorily as commercial vehicles and disclaimed all liability resulting from manufacturer and/or design defects.[41] Arcola expressly disclaimed any and all implied warranties.[42] Thus, Arcola fully satisfied its contractual obligations, under both common law and the UCC, when it delivered the Vehicles to plaintiffs.

---

[40]    Ex. A to the Rolfe Decl. at 3 of 4.

[41]    *Cf. On Time Aviation, Inc. v. Bombardier Capital, Inc.*, 354 Fed. App'x 448, 450 (2d Cir. 2009) (Summary Order) (holding that seller, by selling the aircraft "AS IS," disclaimed responsibility for any defects under Connecticut, New Jersey and Vermont law).

[42]    *See id.* at 451 (holding that all implied warranties were explicitly disclaimed by the "AS IS" provision in the purchase and sale agreement) (citing UCC § 2-316(3)(a) (all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty[.]")).

## 2.    "TLC Approved" Requirement

It is beyond dispute that the Vehicles had some major problems and defendants have admitted as much.   But the Vehicles were repeatedly inspected[43] and repeatedly passed inspection by the TLC.[44]  Moreover, "[t]he TLC did not remove the Chevrolet Uplander accessible taxi from the list of vehicles that may be used as NYC accessible taxicabs."[45]  Contrary to plaintiffs' statement that "TLC approval was an on-going process and not a one-time approval," admissible evidence supports the undeniable fact that the Vehicles were inspected and certified by the TLC at regular intervals.[46]  Thus, the Vehicles were "TLC Approved."  Plaintiffs' reliance on some purported ambiguity in this term is, therefore, misplaced.

---

[43]      "Due to failed inspections, some Vehicles were inspected at TLC's S&E facility up to fifteen times in a single year."  Affidavit in Lieu of Deposition of Martin Grindley ("Grindley Aff."), Acting Assistant Commissioner of the TLC's Safety and Emissions Division, Ex. 4 to the 4/23/10 Declaration of Charles E. Dorkey III, plaintiffs' counsel, ¶ 11.

[44]      *See* TLC Inspection History.

[45]      Grindley Aff. ¶ 14.

[46]      *See* TLC Inspection History.

17

## B.     Revocation of Acceptance

Assuming, *arguendo*, that Arcola could be held liable for breach of

contract by delivering non-conforming Vehicles, plaintiffs' purported revocation

of acceptance was neither timely, nor reasonable, nor complete.  Under the UCC:

> Revocation of acceptance must occur within a reasonable
> time after the buyer discovers or should have discovered
> the ground for it and before any substantial change in
> condition of the goods which is not caused by their own
> defects. It is not effective until the buyer notifies the seller
> of it.[47]

Revocation of acceptance is untimely and unreasonable when a buyer continues to

use goods purchased from a seller and treats them in a manner inconsistent with

revocation after it becomes clear that the deficiencies in the goods cannot be cured

to the buyer's satisfaction.[48]

Plaintiffs argue that their revocation was timely and  reasonable in

light of the on-going efforts to remedy the defects in the Vehicles.  As shown from

the chart above, plaintiffs used many of the Vehicles for more than one year before

returning them to Arcola.   In addition, plaintiffs accrued substantial mileage on

---

[47]     UCC § 2-608(2).

[48]     *See Computerized Radiological Servs. v. Syntex Corp.*, 786 F.2d 72,
75 (2d Cir. 1986) ("The continued use of goods is inconsistent with the seller's
ownership and may be found to constitute an acceptance" under UCC § 2-606(1).).

the Vehicles, many of which had more than sixty thousand miles on their

odometers.   Plaintiffs do not dispute their continued use of the Vehicles.[49]

Plaintiffs also admit that they became aware of the defects in some of the Vehicles

almost immediately upon delivery.[50]  Despite early awareness of non-conformity,

plaintiffs placed the Vehicles into service, subjected them to rigorous commercial

use, accumulated thousands of miles on them, thereby profiting from such use

before "depositing" the Vehicles on Arcola's lot.  Accordingly, plaintiffs'

attempted revocation was neither timely nor reasonable.

Nor was it complete.  Plaintiffs were required to make a complete

tender of ownership to Arcola, which included transferring the Vehicles' titles

back to Arcola.  This was not done.  Instead, plaintiffs parked the Vehicles on

Arcola's outside lot without returning titles.[51]  As a result, the Vehicles' value was

---

[49]     *See* Plaintiffs' Memorandum of Law in Opposition to Defendant
Arcola Sales & Service Corp.'s Motion for Summary Judgment ("Opp. Mem.") at
12 n.5 ("[I]t is not surprising that certain of the vehicles were driven more than
average because they were forced into extended service by the mechanical failures
of the other Vehicles.  In all cases, the Vehicles were used in a manner consistent
with their use as New York City taxi cabs.").

[50]     *See id.* at 15 ("Then, Plaintiffs began reporting non-conformities
almost immediately after taking possession (*i.e.*, putting Defendants [on] notice
and reserving their rights).").

[51]     Plaintiffs previously believed that they returned title to the Vehicles
upon their return.  Plaintiffs subsequently learned that the titles were in the

significantly impaired and continued to diminish as they lay fallow on Arcola's lot. In sum, plaintiffs' attempted revocation of acceptance was untimely, unreasonable, and incomplete. Because plaintiffs' continuing use of the Vehicles was "inconsistent with the seller's ownership," plaintiffs cannot rely on UCC § 2-608(2) to claim a valid revocation of acceptance on their part.[52]

## C.   Arcola's Duty to Repair

Plaintiffs argue that Arcola breached its obligations to complete repairs and modifications allegedly undertaken with regard to some or all of the Vehicles.[53] According to plaintiffs, because "Arcola's attempt at repairs and modifications was wholly unsuccessful, it not only breached its obligations under

---

possession of the prior counsel and had not been returned to Arcola. *See id.* at 8, n.4. Arcola should not be penalized for the apparent miscommunication between plaintiffs and their attorneys.

[52]     *Sobiech v. International Staple and Mach. Co., Inc.*, 867 F.2d 778, 781 (2d Cir. 1989) (holding that buyer's use of the machines for more than three years "'was far longer than was reasonably necessary to acquire' other machines, a factor considered by [the Second Circuit] in *Syntex Corp.*") (quoting *Syntex Corp.*, 786 F.2d at 75).

[53]     *See* Opp. Mem. at 2 ("Unquestionably, Arcola played an intimate role in repairing the Vehicles once they began to manifest material flaws. Regardless of whether Arcola undertook repairs pursuant to an agreement with ElDorado, Arcola failed in its obligations and is therefore liable to Plaintiffs – either as direct or third-party beneficiaries – for breach of contract.").

the Vehicle Orders . . . it also breached its obligations to Plaintiffs (directly or
indirectly) with respect to those repairs and modifications it undertook."[54]

The problem with plaintiffs' argument is that it exceeds the breach of
contract claim brought against Arcola in the TAC, which states, in pertinent part,
as follows:

> 91.    The Vehicle Orders reflected the bargain between
> and amongst Plaintiffs and Arcola, and incorporated
> promises made by Defendants GM and ElDorado, for the
> purchase of the Vehicles to serve as taxicabs with specific
> components for wheelchair-accessiblity.
>
> * * *
>
> 97.    Defendant Arcola has materially breached the
> Vehicle Orders with Plaintiffs.[55]

The Vehicle Orders, however, nowhere mention any obligation on the part of
Arcola to make further repairs upon the Vehicles.[56]  Thus, plaintiffs seek to defeat
Arcola's summary judgment motion on the ground that Arcola breached a separate
obligation – as yet unidentified but independent from the Vehicle Orders –  to
make further repairs to the Vehicles.  Plaintiffs do not, however, identify either the

---

[54]    *See id.* at 20.

[55]    TAC §§ 91, 97.

[56]    As indicated earlier, it is unclear whether Arcola was paid an
additional amount for these repairs. *See supra* Part II n.20.

21

source or scope of this separate obligation, nor do they state whether it was a verbal or written agreement. Accordingly, plaintiffs seek to raise a genuine issue of material fact with regard to a breach of contract claim that simply does not exist. A party must present specific facts to defeat summary judgment, not assumptions and conjecture.[57] Plaintiffs have failed to do so with regard to their newly alleged subsequent repair claim.

## V. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted and the TAC is dismissed in its entirety. The Clerk of the Court is directed to close this motion (Document # 94) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
June 21, 2010

---

[57]     See Burgess v. Fairport Cent. School Dist., No. 08-3595-cv, 2010 WL 1172425, at *1 (2d Cir. Mar. 29, 2010) (citing Bickerstaff v. Vassar Coll., 196 F.3d 435, 452 (2d Cir . 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."); Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.")).

## - Appearances -

**For Plaintiffs:**

Charles E. Dorkey III, Esq.
Alan F. Kaufman, Esq.
McKenna Long & Aldrige LLP
230 Park Avenue, Suite 1700
New York, NY 10169
(212) 905-8330

**For Defendant Arcola:**

Christopher E. Hartmann, Esq.
Wacks & Hartmann, LLC
404 Park Avenue South, 14th Floor
New York, NY 10016
(212) 481-2744

Paul H. Levinson, Esq.
McLaughlin & Stern, LLP
260 Madison Avenue, 18th Floor
New York, NY 10016
(212) 448-1100